## THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

YORKTOWN CENTRAL
SCHOOL DISTRICT,

                            Plaintiff,

-against-

MONSANTO COMPANY,
PHARMACIA CORPORATION,
PECORA CORPORATION and
JOHN DOES 1-20,

                        Defendants.

----------------------------------------------------------------- X

Civil Action No.: 07 - 8648 (SCR)

ECF CASE

---

## MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS COMPLAINT

---

ROBERT WRIGHT (RW- 0971)
**WHITE AND WILLIAMS LLP**
One Penn Plaza, Suite 1801
New York, New York 10119
Phone: (212) 244-9500
Email: wrightr@whiteandwilliams.com
*Attorneys for Defendants*
*Monsanto Company and*
*Pharmacia Corporation*

***Of Counsel:***
    *Robert Wright (RW-0971)*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF FACTS ............................................................................ 3

STANDARD FOR MOTION TO DISMISS ...................................................... 4

LEGAL ARGUMENT .................................................................................. 5

POINT I

I.   THE DISTRICT'S COMPLAINT AFFIRMATIVELY ESTABLISHES THAT THE
     FIRST THROUGH NINTH CAUSES OF ACTION ARE TIME BARRED AS A
     MATTER OF LAW ................................................................................. 5

     A.   Misrepresentation and Fraudulent Concealment ............................ 5

     B.   Negligence/Recklessness and Strict Liability ................................ 6

     C.   Breach of Warranty ...................................................................... 8

     D.   General Business Law .................................................................. 9

POINT II

II.  THE DISTRICT'S COMPLAINT LACKS ALLEGATIONS OF ESSENTIAL
     ELEMENTS REQUIRED FOR EACH OF ITS CAUSES OF ACTION ............... 10

     A.   Misrepresentation and Fraudulent Concealment ........................... 10

     B.   Negligence and Recklessness ....................................................... 12

     C.   Strict Products Liability – Manufacturing Defect ......................... 13

     D.   Strict Products Liability – Failure to Warn .................................. 14

     E.   Strict Products Liability – Design Defect ..................................... 15

     F.   Breach of Express Warranty ........................................................ 16

     G.   Breach of Implied Warranty of Fitness ......................................... 17

     H.   Breach of Implied Warranty of Merchantability ............................ 17

PHLDMS1 3749828v.1

I.   General Business Law ................................................................ 18

J.   Declaratory Judgment .............................................................. 20

K.   Punitive Damages ...................................................................... 22

**POINT III**

III.   THE DISTRICT'S COMPLAINT AFFIRMATIVELY ESTABLISHES THAT
       IT CANNOT RECOVER PROPERTY DAMAGE CLAIMS FOR WINDOW
       CALK AS A MATTER OF LAW ................................................... 22

**CONCLUSION** .................................................................................. 23

PHLDMS1 3749828v.1

# TABLE OF AUTHORITIES

**CASE LAW**

Adams v. Genie Indus. Inc.,
 2007 N.Y. Misc. LEXIS 323 (N.Y. Co. Jan. 8, 2007) .............................................. 12

Arell's Fine Jewelers, Inc. v. Honeywell, Inc.,
 566 N.Y.S.2d 505 (4th Dep't 1991) ...................................................................17, 18

Bildstein v. Mastercard Int'l Inc.,
 329 F. Supp. 2d 410 (S.D.N.Y. 2004) ................................................................. 4, 18

Blanco v. A.T.& T.,
 689 N.E.2d 506 (N.Y. 1997) ...................................................................................... 7

Brooklyn Law Sch. v. Raybon, Inc.,
 540 N.Y.S.2d 404 (N.Y. Co. 1989) ....................................................................17, 18

Butler v. Interlake Corp.,
 665 N.Y.S.2d 192 (4th Dep't 1997) ....................................................................13, 17

Calabria v. St. Regis Corp.,
 508 N.Y.S.2d 186 (1st Dep't 1986) ........................................................................... 8

Cartier, Inc. v. Four Star Jewelry Creations, Inc.,
 348 F. Supp. 2d 217 (S.D.N.Y. 2004) ..................................................................... 20

Chase Manhattan Bank v. T&N,
 905 F. Supp. 107 (S.D.N.Y. 1995) ...................................................................... 8, 16

Cover v. Cohen,
 461 N.E.2d 864 (N.Y. 1984) .................................................................................... 16

Gaidon v. Mut. Life Ins. Co.,
 725 N.E.2d 598 (N.Y. 1999) .................................................................................... 18

Gaidon v. Mut. Life Ins. Co.,
 750 N.E.2d 1078 (N.Y. 2001) .................................................................................... 9

Galletta v. Valmet, Inc.,
 2007 U.S. Dist. LEXIS 23665 (N.D.N.Y. Mar. 30, 2007) ........................ 8, 12, 14, 15

Germantown Cent. Sch. Dist. v. Clark, Clark, Millis & Gilson, AIA,
 791 N.E.2d 398 (N.Y. 2003) ................................................................................. 7, 8

Germantown Cent. Sch. Dist. v. Clark, Clark, Mills & Gilson, AIA,
 743 N.Y.S.2d 599 (3d Dep't 2002), aff'd, 791 N.E.2d 398 (N.Y. 2003) .................... 20

Gurary v. Winehouse,
 190 F.3d 37 (2d Cir. 1999) ...................................................................................... 11

Hirsch v. Arthur Anderson & Co.,
 72 F.3d 1085 (2d Cir. 1995) ....................................................................................... 4

Hygienic Specialties Co. v. H.G. Salzman, Inc.,
    302 F.2d 614 (2d Cir. 1962) ................................................................ 11

Kaufman v. Cohen,
    760 N.Y.S.2d 157 (1st Dep't 2003) ...................................................... 5

King v. Audax Constr. Corp.,
    2007 U.S. Dist. LEXIS 65682 (E.D.N.Y. Sept. 5, 2007) ................... 20, 21

Liriano v. Hobart Corp.,
    700 N.E.2d 303 (N.Y. 1998) ............................................................... 13

MRI Broadway Rental, Inc. v. U.S. Mineral Prods. Co.,
    704 N.E.2d 550 (N.Y. 1998) ................................................................. 7

Mack v. Altmans Stage Lighting Co., Inc.,
    470 N.Y.S.2d 664 (2d Dep't 1984) ...................................................... 22

Martinez v. Dr. Williams R.,
    186 F. Supp. 2d 353 (S.D.N.Y. 2002) ................................................... 4

McCabe v. Queensboro Farm Prods., Inc.,
    239 N.E.2d 340 (N.Y. 1968) ............................................................... 21

McDermott v. City of New York,
    406 N.E.2d 460 (N.Y. 1980) ............................................................... 21

New York Univ. v. Continental Ins. Co.,
    662 N.E.2d 763 (N.Y. 1995) ................................................... 18, 19, 22

Nicholas v. Goord,
    430 F.3d 652 (2d Cir. 2005) ................................................................. 4

Remington Rand Corp. v. Amsterdam-Rotterdam Bank,
    68 F.3d 1478 (2d Cir. 1995) .......................................................... 10, 11

In re Rezulin Products Liability Litigation, 392 F. Supp. 2d 597 (S.D.N.Y. 2005) ......... 19

Rothstein v. Tenn. Gas Pipeline Co., 616 N.Y.S.2d 902 (2d Dep't 1994),
    aff'd, 661 N.E.2d 146 (N.Y. 1995) ........................................................ 8

Russo v. Mass. Mut. Life Ins. Co.,
    711 N.Y.S.2d 254 (3d Dep't 2000),
    rev'd, Gaidon v. Mut. Life Ins. Co., 750 N.E.2d 1078 (N.Y. 2001) ......... 9

Scarangella v. Thomas Built Buses, Inc.,
    717 N.E.2d 679 (N.Y. 1999) ............................................................... 16

Siler v. Lutheran Soc. Servs.,
    782 N.Y.S.2d 93 (2d Dep't 2004) ......................................................... 5

St. Patrick's Home for the Aged and Infirm v. Laticrete Int'l, Inc.,

PHLDMS1 3749828v.1

696 N.Y.S.2d 117 (1st Dep't 1999)..................................................................5, 18, 19, 22

Topliff v. Wal-Mart Stores E. LP,
    2007 U.S. Dist. LEXIS 20533 (N.D.N.Y. Mar. 22, 2007) ...................................12, 15

U.W. Marx, Inc. v. Bonded Concrete, Inc.,
    776 N.Y.S. 2d 617, 620 (3d Dep't 2004) ..................................................................... 19

Voss v. Black & Decker Mfg. Co.,
    717 N.E.2d 679 (N.Y. 1983).................................................................................15, 16

Wender v. Gilberg Agency,
    716 N.Y.S.2d 40 (1st Dep't 2000)................................................................................ 9

Young v. Robertshaw Controls Co.,
    481 N.Y.S.2d 891 (3d Dep't 1984)........................................................................10, 11

## COURT RULES/STATUTES

Fed. R. Civ. P. 9(b) ...................................................................................................... 11

Fed. R. Civ. P. 12(b)(6)............................................................................................. 1, 11

N.Y. C.P.L.R. §§ 203(g) ............................................................................................... 5

N.Y. C.P.L.R. § 213(8) ................................................................................................. 5

N.Y. C.P.L.R. § 214-c .................................................................................................. 7

N.Y. C.P.L.R. § 214(4) ................................................................................................. 7

## PRELIMINARY STATEMENT

Defendants Monsanto Company and Pharmacia Corporation (collectively "Monsanto") respectfully seek the dismissal of the complaint filed by the Yorktown Central School District (the "District") pursuant to Federal Rule of Civil Procedure 12(b)(6) on the bases that the District failed to timely file its claims and/or failed to plead basic elements of its causes of action against Monsanto.

Inflated with claims for fraud, deceptive business practices, punitive damages, attorney fees, and hypothetical future personal injury and property damage claims, at its core, this is a simple action for the cost of abating caulking materials, used in the construction of school buildings in 1969, that allegedly contained elevated levels of polychlorinated biphenyls ("PCBs").

The District's claims against Monsanto are based solely on Monsanto's status as a manufacturer of PCBs used as a component in the caulking material allegedly manufactured by Pecora Corporation ("Pecora"). Compl. ¶¶ 53, 87, 89. There is no allegation that Monsanto had any direct contact or relationship with the District, knew or could have known that the District purchased PCB-containing products, or even knew of the District's existence.

The District's alleged property damage occurred in 1969 when PCB-containing building products were installed in the French Hill school buildings. Its causes of action for misrepresentation/fraudulent concealment, negligence/recklessness, strict products liability, breach of warranty, and New York General Business law violations all accrued in 1969. The District did not institute this action until well after the statute of limitations applicable to each of these claims and, therefore, they should be dismissed with prejudice as time-barred. The District's indemnity action for remediation costs incurred in 2005-2006 arguably circumvents the

statute of limitations, but that claim, like all of the other claims, fails on substantive grounds because the District failed to plead essential elements of each cause of action against Monsanto. Accordingly, the District's entire complaint should be dismissed with prejudice.

PHLDMS1 3749828v.1

## <u>STATEMENT OF FACTS</u>

The factual allegations relevant to this motion are set forth in the District's complaint which is appended hereto as Exhibit 1 and incorporated herein by reference.

PHLDMS1 3749828v.1

## **STANDARD FOR MOTION TO DISMISS**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept as true the allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." Nicholas v. Goord, 430 F.3d 652, 658 (2d Cir. 2005). The Court need not, however, credit general conclusory allegations, Hirsch v. Arthur Anderson & Co., 72 F.3d 1085, 1092 (2d Cir. 1995), or "legal conclusions masquerading as factual conclusions," Martinez v. Dr. Williams R., 186 F. Supp. 2d 353, 355 (S.D.N.Y. 2002). If, on the well-pleaded facts, the plaintiff fails to plead the basic elements of a cause of action, dismissal is proper. Bildstein v. Mastercard Int'l Inc., 329 F. Supp. 2d 410, 413 (S.D.N.Y. 2004).

## LEGAL ARGUMENT

## POINT I

I.    THE DISTRICT'S COMPLAINT AFFIRMATIVELY ESTABLISHES THAT THE FIRST THROUGH NINTH CAUSES OF ACTION ARE TIME BARRED AS A MATTER OF LAW

### A.    Misrepresentation and Fraudulent Concealment

The District's first cause of action for misrepresentation and fraudulent concealment is governed by a statute of limitations that runs until the later of six-years from the date of the misrepresentation/fraud or two years from the date that the District discovered the misrepresentation/fraud or could with reasonable diligence have discovered it.  N.Y. C.P.L.R. §§ 203(g), 213(8); Siler v. Lutheran Soc. Servs., 782 N.Y.S.2d 93 (2d Dep't 2004).

New York courts, however, "will not apply the fraud Statute of Limitations if the fraud allegation is only incidental to the claim asserted; otherwise, fraud would be used as a means to litigate stale claims."  Kaufman v. Cohen, 760 N.Y.S.2d 157, 119 (1st Dep't 2003) (citations omitted).  Accordingly, "where an allegation of fraud is not essential to the cause of action pleaded except as an answer to an anticipated defense of Statute of Limitations, courts 'look for the reality, and the essence of the action and not its mere name.'"  Id.

The District is not entitled to the benefit of the fraud statute of limitations because its allegation that Monsanto knew that its product was defective is merely incidental to its claim that it was injured because of a defective product.  See, e.g., St. Patrick's Home for the Aged and Infirm v. Laticrete Int'l, Inc., 696 N.Y.S.2d 117, 121 (1st Dep't 1999) (in action for leaking exterior wall panels, "plaintiff was injured first and foremost by the alleged defects in the product, and the additional allegation that defendant knew its product was defective does not entitle plaintiff to the longer limitations period").

Even assuming *arguendo* that the District is entitled to the benefit of the fraud statute of limitations, its cause of action for misrepresentation/fraud is still time-barred. The District alleges that, in 1969, Monsanto manufactured and sold a product that it knew to be defective. Compl. ¶¶ 94-95. Because the District did not file suit within six years, it must establish that it could not have reasonably discovered the alleged misrepresentation/fraud until October 5, 2005 (two years before filing suit). The District's own allegations, however, establish that the District actually knew of Monsanto's alleged misrepresentation/fraud, and the alleged injury resulting therefrom, well before October 5, 2005.

The District explicitly alleges that, on October 8, 2004, it was advised by the Westchester County Department of Health that there were elevated levels of PCBs in the window caulk in the French Hill school building; in January 2005, the District received independent test results of the caulk showing PCB levels in violation of federal regulations and received test results of the soil samples around the building showing elevated PCB levels; and in August 2005, the District removed the soil pursuant to a plan approved by the Department of Health and conducted "wipe tests" of the French Hill buildings that revealed elevated PCB levels. Compl. ¶¶ 64-76.

By its own admissions, therefore, the District actually knew, or should have known, of Monsanto's alleged misrepresentation/fraud as of October 2004 and no later than August 2005. Because the District did not file suit until October 5, 2007, its misrepresentation/fraud claims are not saved by the two-year discovery rule. Accordingly, the District's misrepresentation/fraud claim should be dismissed as time-barred.

### B.    Negligence/Recklessness and Strict Liability

The District's second cause of action for negligence/recklessness and the District's third, fourth, and fifth causes of action for strict liability are governed by a three-year statute of

limitations that runs from the date of injury.  N.Y. C.P.L.R. § 214(4); Blanco v. A.T.& T.,  689 N.E.2d 506, 510 (N.Y. 1997).

The date of installation of a defective product in a building is the date that the "injury" occurs.  MRI Broadway Rental, Inc. v. U.S. Mineral Prods. Co., 704 N.E.2d 550, 551 (N.Y. 1998) ("for Statute of Limitations purposes, plaintiff's injury occurred when the asbestos-containing material was installed."); Germantown Cent. Sch. Dist. v. Clark, Clark, Millis & Gilson, AIA, 791 N.E.2d 398, 401 (N.Y. 2003) ("the harm to plaintiff's property occurred upon installation of the asbestos in the building . . . .").

The "injury" in this case occurred when PCBs/PCB-containing products were installed in the school building in 1969.  The District filed its complaint 38 years after the date of injury. The District's claims are, therefore, time-barred unless tolled by the discovery rule applicable to property damage caused by exposure to toxic substances, N.Y. C.P.L.R. §§ 201, 214-c.  See Germantown, 791 N.E.2d at 401 (dismissing claim for asbestos abatement absent showing that it fell within N.Y. C.P.L.R. § 214-c).

Under controlling precedent, Section 214-c did not toll the statute of limitations on the District's property damage claims.  Section 214-c does not apply to property damage claims solely for the abatement of the defective product itself.  See, e.g., Germantown, 791 N.E.2d at 400-01.  Rather, Section 214-c only applies to additional property damage caused by the toxic substance above and beyond the substance's mere presence in the building.  Germantown, 791 N.E.2d at 401.  As explained in Germantown, where the Court of Appeals refused to apply Section 214-c to a claim for the abatement of asbestos in a school building:

> Although the statute embraces an "injury to property," there is no allegation by plaintiff that the asbestos migrated to a different location, became airborne or friable, or caused illness to any occupants of the building.  Where, as here, plaintiff's property damage claim involves no additional damage to its building since the original implantation of the harmful substance – or stated another way,

- 7 -

> where the passage of time has produced no change in the consequences of the presence of asbestos – the injury cannot be said to have resulted from the latent effects of exposure to a toxic substance.  Plaintiff's situation is not analogous to hazardous waste or chemical spill contamination cases where the property damage results from the seepage or infiltration of a toxic foreign substance over time. Here the harm to plaintiff's property occurred upon installation of the asbestos in the building and was constant thereafter.

Id. (citations omitted).

The District does not allege that the passage of time has produced any change in the consequences of the presence of PCBs in the French Hill school buildings, *i.e.*, the District does not allege that PCBs migrated from the caulking materials or caused any illness.  Instead, the District merely seeks the costs it incurred for the abatement and disposal of the PCB-containing products, *i.e.*, the caulking materials, themselves.  Because the District's claims for the abatement of the caulking materials do not fall within Section 214-c, the statute of limitations is not tolled.  Accordingly, the District's negligence/recklessness and strict liability property damage claims, should be dismissed as time-barred.

### C.    **Breach of Warranty**

The District's sixth to eighth causes of action for breach of express and implied warranties are governed by a four-year statute of limitations that runs from the tender of delivery. Calabria v. St. Regis Corp., 508 N.Y.S.2d 186, 188 (1st Dep't 1986); Galletta v. Valmet, Inc., 2007 U.S. Dist. LEXIS 23665, *26 (N.D.N.Y. Mar. 30, 2007).

Section 214-c does not apply to breach of warranty claims.  Chase Manhattan Bank v. T&N, 905 F. Supp. 107, 116 (S.D.N.Y. 1995); Rothstein v. Tenn. Gas Pipeline Co., 616 N.Y.S.2d 902, 905-06 (2d Dep't 1994), aff'd, 661 N.E.2d 146 (N.Y. 1995) (other grounds).

The District alleges a breach of warranty by Monsanto's sale and delivery of a defective product in 1969.  Because the District did not file suit within four years of delivery, its breach of warranty claims should be dismissed as time-barred.

- 8 -

D.     **General Business Law**

The District's ninth cause of action for New York General Business Law claims is governed by a three-year statute of limitations that runs from the date that the District was allegedly injured by a deceptive practice prohibited by the statute. Gaidon v. Mut. Life Ins. Co., 750 N.E.2d 1078, 1083 (N.Y. 2001).

The District alleges that, in 1969, Monsanto knew or should have known that PCBs were unsafe and that its "acts, representations and/or omissions" constituted deceptive practices "in connection with the sale" and false advertising of its product(s) for which the District sustained property damage. Compl. ¶¶ 155-66. Based on its own allegations, the District, thus, sustained its alleged injury in 1969.

New York courts have held that the discovery rule is inapplicable to General Business Law claims. See Wender v. Gilberg Agency, 716 N.Y.S.2d 40, 41-42 (1st Dep't 2000) ("Plaintiff's claims under General Business Law § 349 . . . are time-barred as the three-year limitations period set forth in CPLR 214(2) applies to causes of action predicated thereon and the date of discovery rule is not applicable and cannot serve to extend that limitations period."); Russo v. Mass. Mut. Life Ins. Co., 711 N.Y.S.2d 254, 255-56 (3d Dep't 2000) ("While we are not unsympathetic to plaintiff's contention that she was unable to discern defendant's alleged deceptive practices within three years of the time she purchased her policy of insurance, we nevertheless are constrained by the dictates of CPLR 201 and cannot extend the applicable statute of limitations by adopting a discovery rule in this case."), rev'd other grounds, Gaidon, 750 N.E.2d at 1084.

Because the District did not bring suit until 2007, its General Business Law claims should be dismissed as time-barred.

- 9 -

## POINT II

II.  **THE DISTRICT'S COMPLAINT LACKS ALLEGATIONS OF ESSENTIAL ELEMENTS REQUIRED FOR EACH OF ITS CAUSES OF ACTION**

### A.  **Misrepresentation and Fraudulent Concealment**

The District's cause of action for misrepresentation and fraudulent concealment is based on allegations that Monsanto knew, "during the course of [its] design, distribution, marketing, and sale of its product[] that its PCBs . . . had dangerous product contamination and/or manufacturing defect and/or formulation design defect which could cause severe damages to users of its products and the general public," Compl. ¶ 94, and deliberately concealed the information from the District and the general public, Compl. ¶101. The District alleges that Monsanto had "a duty to reveal this material information" concerning problems associated with the use of PCBs. Compl. ¶ 101.  As a result of Monsanto's alleged misrepresentation/fraudulent concealment, the District alleges that it was denied the opportunity to consider using other products for caulking purposes.  Compl. ¶ 103.

"The essential elements of a cause of action for fraud are the intentional misrepresentation of a material fact, reliance thereon and an injury resulting from the misrepresentation."  Young v. Robertshaw Controls Co., 481 N.Y.S.2d 891, 897 (3d Dep't 1984).  As opposed to an affirmative misrepresentation, "generally nondisclosure or concealment alone does not equate to actionable fraud" under New York law.  Id.  Instead, "a concealment of facts supports a cause of action for fraud only if the non-disclosing party has a duty to disclose." Remington Rand Corp. v. Amsterdam-Rotterdam Bank, 68 F.3d 1478, 1483 (2d Cir. 1995).   A duty to disclose ordinarily exists only if there is a "fiduciary or other relationship signifying a heightened level of trust."  Id.

- 10 -

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting fraud be pleaded with particularity.  Fed. R. Civ. P. 9(b); see Gurary v. Winehouse, 190 F.3d 37, 42 n.6 (2d Cir. 1999) (a complaint that "does not identify any . . . misstatements" does not comply with Rule 9(b) and "may be discarded.").

The District does not allege any affirmative misrepresentations by Monsanto.[1]  Instead, the District merely alleges non-disclosure of alleged problems with the use of PCBs, which, absent a duty to disclose, is not actionable.  Young, N.Y.S.2d at 897; Remington, 68 F.3d at 1483.  The District does not allege any facts – apart from conclusory allegations – that establish that Monsanto had a duty to disclose alleged problems with the use of PCBs to the District.

New York law does not impose on manufacturers, such as Monsanto, a fiduciary or other relationship of trust with its purchasers.  See Hygienic Specialties Co. v. H.G. Salzman, Inc., 302 F.2d 614, 622-23 (2d Cir. 1962) (finding manufacturer not in fiduciary relationship with wholesale customer).  When New York law imposes no fiduciary or other relationship of trust between a manufacturer and a purchaser, it certainly does not impose such a duty on a manufacturer of a component material and its customer's customer.

Because the District does not identify any affirmative conduct that establishes actionable misrepresentation and the District has failed to plead any factual basis for a duty on the part of Monsanto to disclose any allegedly concealed facts, the Court should dismiss the District's misrepresentation and fraudulent concealment claims.

---

[1] The only arguable affirmative statement identified in the complaint is a 2006 court filing which allegedly states that "PCBs are not particularly dangerous."  Compl. ¶ 97.  The District does not identify the author of the 2006 court paper, the context in which the statement was made, or why it was a misrepresentation, and, therefore, the District does not plead its claim for misrepresentation with adequate specificity as required by Rule of Federal Procedure 9(b).  More important, the 2006 statement was made *after* the District was allegedly in contact with the EPA and other authorities and had remediated the property and, therefore, the District cannot establish any reliance on or injury resulting from the 2006 statement.

- 11 -

B.     <u>Negligence and Recklessness</u>

The District alleges that Monsanto was negligent or reckless in its design, sale, testing, quality assurance, marketing, packaging, warnings, advertising, promotion, monitoring and warning of adverse effects and/or distribution of PCBs.  Compl. ¶ 108.  The District's various allegations of negligence against Monsanto are all logically subsumed under design defect and failure-to-warn theories.

To make out a *prima facie* claim of negligence for a defective design, a plaintiff must show that:  "(1) the manufacturer owed him a duty to exercise reasonable care; (2) breach of that duty so that a product is rendered defective, *i.e.*, reasonably certain to be dangerous; (3) that the defect was the proximate cause of plaintiff's injury; and (4) loss or damage."  <u>Galletta</u>, 2007 U.S. Dist. LEXIS 23665, at *12.  Under New York law, "[w]hether a product is unreasonably dangerous is a question of fact, depending upon such issues as the potential for alternative designs, the costs of alternative designs, and the product's usefulness as designed."  <u>Adams v. Genie Indus. Inc.</u>, 2007 N.Y. Misc. LEXIS 323, *8 (N.Y. Co. Jan. 8, 2007).

The District does not allege any facts regarding the feasibility of a safer alternative design, which is required to establish that PCBs were unreasonably dangerous, and, therefore, has failed to plead an element necessary to support is design defect claim.  In essence, the District merely alleges that PCBs themselves, not any failure to produce a safer alternative design, caused the District's injury.

To make out a *prima facie* claim for negligent failure to warn, a plaintiff must establish that Monsanto knew or had reason to know that the product was dangerous or was likely to be dangerous when used for the purpose for which it is supplied.  <u>Topliff v. Wal-Mart Stores E. LP</u>, 2007 U.S. Dist. LEXIS 20533, *113 (N.D.N.Y. Mar. 22, 2007).

- 12 -

With respect to its failure-to-warn theory, the District incorrectly presumes that Monsanto had a duty to warn the ultimate consumer of Pecora's caulking materials. New York law imposes no duty on a manufacturer of a component material to discover exactly how the completed product will be used, <u>Butler v. Interlake Corp.</u>, 665 N.Y.S.2d 192, 194 (4th Dep't 1997), and the District does not allege that Monsanto knew that the District would purchase PCB-containing products, that PCBs sold to Pecora would be used in caulking material, or that the use of PCBs in caulk in the buildings would pose any danger. In fact, the District does not even allege that it directly purchased the caulking material from Pecora. <u>See</u> Compl. ¶¶ 89, 90, 113.

Additionally, the essence of the failure-to-warn theory is that the lack of a warning caused harm. <u>Liriano v. Hobart Corp.</u>, 700 N.E.2d 303, 305 (N.Y. 1998). In other words, the product could have been used safely with adequate warnings. Here, however, the very core of the District's claim is that under no circumstance could PCBs be used safely and not require removal. The District, thus, does not allege how warnings, either at the time of sale or post-sale, would have remedied the alleged defect, *i.e.*, made PCBs safe for use in the building. In essence, the District is asserting that the very use of PCBs in the building, not the failure to warn, caused harm. No warning, at the time of sale or post-sale, therefore, bears any causal relationship to the District's alleged damages.

Because the District does not plead any facts establishing that PCBs were unreasonably dangerous, and does not plead any facts showing a duty to warn the District or that any such failure to warn caused harm, the District's negligence/recklessness claims should be dismissed.

## C.    <u>Strict Products Liability – Manufacturing Defect</u>

The District asserts a manufacturing defect claim with respect to the caulking materials used in and around the French Hill school buildings. In a manufacturing defect case, a plaintiff

- 13 -

must prove that: "(1) when the product left the defendant's control, it deviated in a material way from its design or performance standards; and (2) the defect was a substantial factor in causing the injury." Topliff, 2007 U.S. Dist. LEXIS 20533, at *84-*85. A manufacturing defect claim is, thus, based on some unintended condition of the product resulting from a flaw in the manufacturing process.

The District's manufacturing defect claim does not pertain to Monsanto's product. Rather, it pertains only to the caulking material. The District alleges that, because the caulk contained PCBs, it had a manufacturing defect. Compl. ¶¶ 114-15. There is no allegation that PCBs themselves had a manufacturing defect. There is no allegation that Monsanto manufactured the caulk. The District, thus, cannot maintain this claim against Monsanto because Monsanto did not manufacture the caulk.

The District, otherwise, failed to allege facts that establish that the caulk had a manufacturing defect. The District has not alleged that the presence of PCBs in the caulk was in any way a deviation from the intended design or composition of the caulk. The District's manufacturing defect claim should, therefore, be dismissed in its entirety. See id. at *92 (granting summary judgment on manufacturing defect claim in absence of evidence of nonconformity with manufacturing requirements).

### D. Strict Products Liability – Failure to Warn

As with its negligence claim, the District alleges that PCBs were defective due to inadequate warnings and instructions at the time of sale and post-marketing.

A plaintiff asserting a strict liability claim based on a failure to warn must establish: "(1) a manufacturer has a duty to warn; (2) against dangers resulting from foreseeable uses about which it knew or should have known; and (3) that failure to do so was the proximate cause of the harm." Galletta, 2007 U.S. Dist. LEXIS 23665, at *17.

- 14 -

The District's strict liability and negligence failure-to-warn claims are equivalent and can be treated the same. Topliff, 2007 U.S. Dist. LEXIS 20533, at *112.

As previously stated in regard to the District's negligence claim, the District incorrectly presumes that Monsanto had a duty to warn Pecora's customers. The District does not allege that it purchased PCBs directly from Monsanto or, for that matter, from Pecora. See Compl. ¶¶ 89, 90, 113. The duty of a manufacturer of a component part to warn a customer's customer has never been recognized under New York law because it is an impossible duty to fulfill. Monsanto's duty extended only to its own customers, not to Pecora's customers, whose identity was unknown to Monsanto. Accordingly, the District has not alleged any facts that establish that any duty on the part of Monsanto to warn extended ultimately to the District.

Even if Monsanto's duty to warn extended to the District, as with its negligence claim, the District does not allege any causal connection between a failure to warn and the District's alleged injury. Indeed, because the District is asserting that the very use of PCBs in the building caused the harm, no warning, at the time of sale or post-sale, could bear any causal relationship to the District's injury. The District's failure-to-warn claim should, therefore, be dismissed.

### E.    Strict Products Liability – Design Defect

The District alleges that Monsanto placed PCBs into the stream of commerce in an unreasonably dangerous condition or, in the alternative, in a condition capable of becoming unreasonably dangerous, and that the defect made them dangerous for use.

To establish strict liability for design defect, a plaintiff must establish: "(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing the plaintiff's injury." Galletta, 2007 U.S. Dist. LEXIS 23665, at *13; see also Voss v. Black & Decker Mfg. Co., 717 N.E.2d 679, 681 (N.Y. 1983). A defectively designed product is one which "at the time

- 15 -

it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce." Scarangella v. Thomas Built Buses, Inc., 717 N.E.2d 679, 681 (N.Y. 1999).   The critical time for evaluating product defect is the date of marketing. Cover v. Cohen, 461 N.E.2d 864, 866 (N.Y. 1984).

As with the District's negligent design defect claim, because the District does not allege any facts regarding the feasibility of a safer alternative design, it has not made a *prima facie* showing that PCBs are unreasonably dangerous. The District's strict liability design defect claim should, therefore, be dismissed.

### F.    Breach of Express Warranty

The District alleges a breach of an express warranty that the caulk containing PCBs was in a safe condition. Compl. ¶¶ 137, 138. The District's express warranty claim pertains only to the caulk. Because the District does not allege that Monsanto manufactured the caulk, the District cannot hold Monsanto liable for breach of an express warranty relating to the sale of the caulk.

Even if applicable to Monsanto, the District fails to state a claim for breach of express warranty. Pursuant to Section 2-725 of the Uniform Commercial Code, the District must establish that Monsanto expressly warranted to the District that PCBs were safe when used as intended and that the District reasonably relied on Monsanto's express warranty. See Chase Manhattan Bank, 905 F. Supp. at 112-13.

The District does not, however, identify any representations that Monsanto made to the District at the time of sale. The District does not even allege that Monsanto was aware of the sale of PCB-containing caulk to the District. The only affirmative statement of any kind identified in the complaint is a 2006 court paper which cannot support a claim for express

- 16 -

warranty for a sale in 1969.  Because there simply are no facts alleged that would establish an express warranty, the District's claim should be dismissed.

### G.    Breach of Implied Warranty of Fitness

The District avers that Monsanto impliedly warranted that PCBs were fit for the purposes for which they were intended, Monsanto knew that the District would use PCB-containing caulk in school buildings, and the District relied on Monsanto to furnish a suitable caulking material, but that the caulk was defective and/or contaminated.  Compl. ¶¶ 143-45.

"It is clear that allegations of privity, that is of a *direct sale* by each defendant to plaintiff personally . . . are required on an implied warranty claim when only property damages or economic loss is alleged."  Brooklyn Law Sch. v. Raybon, Inc., 540 N.Y.S.2d 404, 408 (N.Y. Co. 1989) (emphasis in original); Arell's Fine Jewelers, Inc. v. Honeywell, Inc., 566 N.Y.S.2d 505, 507 (4th Dep't 1991).  The District asserts no personal injury claims and does not allege that Monsanto sold PCBs to it and, therefore, the claim should be dismissed for lack of privity.  See, e.g., Arell's Fine Jewelers, 566 N.Y.S.2d at 507.

Additionally, apart from the District's conclusory allegations, there are no facts alleged that establish that Monsanto, as the mere manufacturer of a component of the caulking material manufactured by Pecora, knew or should have known that Pecora would use PCBs in its caulking material, that the District would use Pecora's caulk in its school buildings, or that the District was relying on Monsanto to furnish suitable caulking materials.  The District's implied warranty claim should, therefore, be dismissed.  See, e.g., Butler, 655 N.Y.S.2d at 194.

### H.    Breach of Implied Warranty of Merchantability

Like its implied warranty of fitness claim, the District's implied warranty of merchantability claim should be dismissed because the District does not allege that it purchased PCBs directly from Monsanto and, therefore, lacks the required privity to state an implied

warranty claim for property damage.  See, e.g., Arell's Fine Jewelers, 566 N.Y.S.2d at 507; Brooklyn Law School, 540 N.Y.S.2d at 408.

I.    **General Business Law**

The District alleges that Monsanto's acts, representations, and/or omissions constitute unconscionable commercial practices and false advertising under Sections 349 and 350 of New York's General Business Law.  The District fails to plead elements of both claims.

A plaintiff must establish three elements under Section 349:  (1) the challenged act or practice was "consumer oriented;" (2) it was misleading in a material way (i.e., a failure to provide information that would have affected the consumer's choice); and (3) the plaintiff suffered "actual" injury (not just the deception itself) as a result.  Bildstein, 329 F. Supp. 2d at 413-14.

The "consumer oriented" conduct must have a broad impact on consumers at large. Gaidon v. Mut. Life Ins. Co., 725 N.E.2d 598, 603 (N.Y. 1999).  Section 349 has typically been applied to "modest transactions" involving parties occupying disparate bargaining positions, and not to private transactions between sophisticated entities.  See, e.g.,  New York Univ. v. Continental Ins. Co., 662 N.E.2d 763, 770 (N.Y. 1995) (refusing to apply act to dispute between major university and its insurance carrier where each side was knowledgeable and received expert representation and advice as contrasted to the "modest type of transaction" the statute was intended to reach in which the parties occupy disparate bargaining power); St. Patrick's Home, 696 N.Y.S.2d at 122 ("The transaction in this case was a sizable one between two companies in the building construction and supply industry. . . . In short, this was not the type of 'modest' transaction that the statute was intended to reach but rather a private dispute between [a rest home] and a supplier of a defective product.") (citations omitted).

PHLDMS1 3749828v.1

The District has not met its threshold requirement of alleging facts that would establish "consumer oriented" conduct. The District alleges only generally that Monsanto engaged in deceptive marketing and sales efforts for PCBs directed to the general public. The District does not allege that Monsanto ever marketed or sold PCBs to the general public. Instead, the District's allegations show that Monsanto sold PCBs to Pecora. The sale of a specialty industrial chemical like PCBs by Monsanto to a sophisticated product manufacturer such as Pecora does not constitute consumer oriented conduct. See, e.g., St. Patrick's Home, 696 N.Y.S.2d at 122 (involving transaction between building construction and supply companies).

Further, the District does not allege that Monsanto had a contract with the District, directly solicited the District, or even had any direct contact with the District. Even if the District's allegations of misrepresentations to the public at large would be sufficient to establish deceptive practices directed at the District, there is no nexus to injury to consumers as is required to state a claim under Section 349.

The District does not allege any injury to "consumers" such students, teachers, or the general public beyond the alleged deception itself. The District alone sustained alleged injury. The District, itself, is not a "consumer," New York Univ., 662 N.E.2d at 767 (involving dispute between major university and insurance carrier); In re Rezulin Products Liability Litigation, 392 F. Supp. 2d 597, 613-14 (S.D.N.Y. 2005) (refusing to apply Section 349 to claim by health benefit plans ("HBPs") against drug company for deceptive marketing directed at pharmacy benefit manager, "a large and sophisticated business," where HBPs and not ultimate consumer-patients were target of misconduct even though ultimate effect was to increase consumption by patients); U.W. Marx, Inc. v. Bonded Concrete, Inc., 776 N.Y.S. 2d 617, 620 (3d Dep't. 2004) (Section 349 does not apply to private contract dispute between general contractor and concrete

- 19 -

supplier even though defective sidewalks installed on public school property had tangential effect on public at large), and, therefore, the District has failed to allege sufficient facts to establish consumer oriented conduct.

The District also has not identified any advertisements in support of its false advertising claim nor alleged that the District was misled or deceived by any such advertisement as required to state a claim under Section 350. See Cartier, Inc. v. Four Star Jewelry Creations, Inc., 348 F. Supp. 2d 217, 252 (S.D.N.Y. 2004) (dismissing Section 350 claim in absence of evidence of materially misleading advertisement).

Accordingly, both the District's Section 349 and 350 General Business Law claims should be dismissed.

### J.    Declaratory Judgment

Although there has been no action brought against the District by any third party, the District is seeking a declaration that Monsanto is required to indemnify it for the District's remediation and related costs, including attorney fees, for PCBs found in and around the French Hill school buildings. The District additionally seeks a present declaration that it is entitled to indemnification for hypothetical future remediation costs and hypothetical future personal injury claims. See Compl. ¶¶ 177-79.

"A cause of action for implied indemnification requires a showing that plaintiff and defendants owed a duty to third parties, and that plaintiff discharged the duty which, as between plaintiff and defendants, should have been discharged by defendants." Germantown Cent. Sch. Dist. v. Clark, Clark, Mills & Gilson, AIA, 743 N.Y.S.2d 599, 604 n.2 (3d Dep't 2002), aff'd, 791 N.E.2d 398 (N.Y. 2003) (other grounds). Only a party who has been held liable but is without fault may seek indemnification. King v. Audax Constr. Corp., 2007 U.S. Dist. LEXIS

- 20 -

65682 (E.D.N.Y. Sept. 5, 2007).  "[A] party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine."  Id.

As a threshold matter, the District cannot establish a right to indemnification because it has not alleged that there has been an adjudication absolving it of fault.  Because the District may have contributed to alleged PCB-related injury, it has no right to indemnification.  See id.

Further, in all of the District's claims, it alleges only that Monsanto breached a duty owed to the District.  The District never alleges that Monsanto breached any duty running to a third party.  The District, further, does not allege that it has been held liable for damages to a third party or even that there has been injury to a third party.  Because the District has failed to allege facts that establish that the District discharged a duty that Monsanto owed to a third party, the District's claim for indemnification should be dismissed.  See id. at 605.

Additionally, the District's claim for indemnification for hypothetical future injuries is premature.  A cause of action for indemnity does not accrue until the party seeking indemnification incurs a loss.  McDermott v. City of New York, 406 N.E.2d 460, 461 (N.Y. 1980).  An exception exists only in the situation where a party seeking indemnification is permitted to commence a third-party action against an indemnitor to obtain a conditional judgment pending resolution of the principle litigation against the indemnitee.  See, e.g., McCabe v. Queensboro Farm Prods., Inc., 239 N.E.2d 340, 342 (N.Y. 1968).  It would be inappropriate for this Court to decide the District's claim for contingent indemnification in this action because the District has not only incurred no loss, i.e., made no payments for future injuries to third parties or future property damage, there has not even been any other injury identified with respect to a third party or the District.  Because the District's claim for indemnification for future personal injury and future property damage has clearly not accrued, it should be dismissed.

### K.      Punitive Damages

The District asserts that it is entitled to punitive damages.  Punitive damages are available only for conduct that is "gross," "morally reprehensible," and of such "wanton dishonesty as to imply criminal indifference to civil obligations."  New York Univ. v. Continental Ins. Co., 662 N.E.2d 763, 767 (N.Y. 1995).   Regardless of the District's bald allegations of fraud and deception, its action distills to a claim for the costs of remediating a product installed in 1969 that, to date, has caused no personal injury.  The District's prayer for punitive damages should be stricken because the District has failed to allege any facts that establish fraudulent conduct on the part of Monsanto, much less fraud that evinces "wanton dishonesty as to imply criminal indifference to civil obligations."   See, e.g.,   St. Patrick's Home, 696 N.Y.S.2d at 124 (dismissing punitive damage claim against manufacturer of defective exterior wall panels who represented that product was suitable for intended use and concealed alleged complaints about product).

### POINT III

### III.    THE DISTRICT'S COMPLAINT AFFIRMATIVELY ESTABLISHES THAT IT CANNOT RECOVER PROPERTY DAMAGE CLAIMS FOR WINDOW CAULK AS A MATTER OF LAW

The District seeks the cost of remediating "PCB Contaminated Materials" which it defines as including window caulking.  Compl. ¶ 51.  The District's removal of the window caulking had nothing to do with PCBs because, by its own admission, the District removed the window caulking as part of a planned renovation project in 2003, Compl. ¶ 59.

To establish a *prima facie* showing of causation, a plaintiff must show that the defendant's act "was a substantial cause of the events which produced the injury":

> In ascertaining whether the defendant's conduct constitutes a substantial factor in bringing about the harm of which the plaintiff complains, consideration should be given to (1) the aggregate number of factors involved which contribute towards

- 22 -

the harm and the effect which each has in producing it, (2) whether the defendant has created a continuous force active up to the time of harm, or whether the situation was acted upon by other forces for which the defendant is not responsible, and (3) the lapse of time.

Mack v. Altmans Stage Lighting Co., Inc., 470 N.Y.S.2d 664, 666-67 (2d Dep't 1984).

Accordingly, in order to recover against Monsanto for the cost of removing the window caulking, the District must establish that it removed the window caulking because of the presence of PCBs. In other words, the District cannot recover against Monsanto for the cost of the removal of the caulk if it had nothing to do with PCBs.

The District, however, admits in its complaint that it was not until *after* the District removed the window caulking and replaced the windows pursuant to a planned window replacement project that PCBs were detected in the caulk. Compl. ¶ 60. The District's complaint, thus, affirmatively establishes that the alleged presence of PCBs did not cause the District to incur its costs for the removal of the window caulking. Regardless of the theory of liability on which the District relies, its damage claim for remediation of the window caulking should, therefore, be dismissed with prejudice.

## CONCLUSION

Based on the foregoing, Monsanto Company and Pharmacia Corporation respectfully request this Honorable Court to grant this motion and dismiss the District's complaint consistent with the attached proposed form of order.

PHLDMS1 3749828v.1

Respectfully submitted,

**WHITE AND WILLIAMS LLP**


By:\_\_s/ Robert Wright_____
ROBERT WRIGHT (RW- 0971)
**WHITE AND WILLIAMS LLP**
One Penn Plaza, Suite 1801
New York, New York 10119
Phone: (212) 244-9500
Email: wrightr@whiteandwilliams.com
 *Attorneys for Defendants*
*Monsanto Company and*
*Pharmacia Corporation*

- 24 -