THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------ X
YORKTOWN CENTRAL                          Civil Action No.: 07 - 8648
SCHOOL DISTRICT,                          (SCR)
                              Plaintiff,

    -against-                             ECF CASE

MONSANTO COMPANY,
PHARMACIA CORPORATION,
PECORA CORPORATION and
JOHN DOES 1-20,
                              Defendants.
------------------------------------------------------------------ X
```

### REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

ROBERT WRIGHT (RW- 0971)
THOMAS M. GOUTMAN (*admitted pro hac vice*)
**WHITE AND WILLIAMS LLP**
One Penn Plaza, Suite 1801
New York, New York 10119
Phone: (212) 244-9500
Email: wrightr@whiteandwilliams.com
*Attorneys for Defendants*
*Monsanto Company and*
*Pharmacia Corporation*

*Of Counsel:*
    *Robert Wright (RW-0971)*

PHLDMS1 4114760v.2

The District has filed an Amended Complaint as well as a brief based on the original Complaint and Amended Complaint in response to Monsanto's Motion to Dismiss. Monsanto will file a Motion to Dismiss Amended Complaint, incorporating its Motion to Dismiss Complaint, concurrent with this Reply. Monsanto submits this reply in support of dismissal of the Amended Complaint. A copy of the Amended Complaint is appended hereto as Exhibit 1.

In its Amended Complaint, the District has discontinued its claims for misrepresentation, fraudulent concealment, breach of express warranty, breach of implied warranty of fitness, breach of implied warranty of merchantability, and window caulk removal in conjunction with its 2003 renovation project. As to its remaining claims, while the District has not expressly withdrawn them, it makes no argument and/or cites no legal authority in support of them. Nothing newly alleged in the District's Amended Complaint changes the fact that the District has failed to state any claim upon which relief can be granted.

## POINT I

I. **THE DISTRICT HAS FAILED TO ESTABLISH THAT ITS NEGLIGENCE/RECKLESSNESS, STRICT LIABILITY, AND NEW YORK GENERAL BUSINESS LAW CLAIMS ARE TIMELY-FILED AS A MATTER OF LAW**

### A. Negligence/Recklessness and Strict Liability

The District does not dispute that its "injury" occurred in 1969 upon installation of PCBs in the French Hill School and, therefore, its claims for negligence and strict liability can only be saved if Section 214-c, N.Y. C.P.L.R. § 214-c, tolled the running of the statute of limitations until October 2004. None of the District's negligence and strict liability claims survives the statute of limitations bar as a matter of law.

The District effectively acknowledges that its claims for the abatement of the caulk itself are time-barred. While the District mildly suggests that Section 214-c applies to its claims for PCB abatement, the District cites no authority supporting application of Section 214-c to its

claims for product abatement and, in fact, "[t]he District does not dispute Monsanto's interpretation of the holding of [Germantown Cent. Sch. Dist. v. Clark, Clark, Millis & Gilson, AIA, 791 N.E.2d 398, 401 (N.Y. 2003)]," Pl.'s Memo. Law at 9. Because Germantown indisputably precludes application of Section 214-c to abatement claims, all of the District's claims for the cost of removal and related disposal expenses of the PCB-containing caulk itself, allegedly used as window and door sealant caulking and brick mortar and sidewalk mortar caulking, are time-barred as a matter of law.

Apart from its time-barred claims for abatement costs, the District maintains that it has pleaded claims for toxic exposure within the ambit of Section 214-c based on allegations that: (1) PCBs were found in the soil around the French Hill school and (2) concrete in the sidewalks adjacent to the expansion joint caulk was removed as part of the caulk abatement. The District has failed to allege sufficient facts to establish that either claim falls within Section 214-c as a matter of law.

The District's own allegations concerning the cause of PCBs in the soil are fatal to its soil remediation claim. Specifically, the District alleges that the PCBs in the soil came from caulk left on the ground during the 2003 window renovation project. The District's Amended Complaint specifically alleges that pieces of window caulk removed during the renovation were left on the ground and that it was the soil samples taken from the area where the windows were replaced in which elevated levels of PCBs were found. See Am. Compl. ¶¶ 67, 72, 75, 78. The District is not alleging that Monsanto is responsible for the window caulk removal and, thus, certainly cannot hold Monsanto responsible for PCB migration from caulk left on the ground as a result of the project. Indeed, window caulk left on the ground would not have been an intended

use of Monsanto's product. Therefore, the District's claim that its soil remediation claim falls within the scope of Section 214-c is untenable.

As for the concrete adjacent to the sidewalk expansion joints, the District specifically alleges only that *as part of the caulk remediation*, and as required by applicable law, concrete surrounding the caulk was removed. See Am. Compl. ¶¶ 88-91. Clearly, the sidewalk expansion joint caulk remediation project falls squarely within the Germantown exclusion of abatement claims from the discovery rule.

Accordingly, all of the District's negligence/recklessness and strict liability claims should be dismissed with prejudice as time-barred.

### B. General Business Law

The District does not dispute that the discovery rule is inapplicable to its claims under the New York General Business Law. The District, instead, disagrees with Monsanto as to when its "injury" occurred for purposes of the General Business Law. Because the District's injury for purposes of its abatement-related damages occurred in 1969, and it has not established that any alleged migration-related "injury" occurred in 2004, its claims are barred by the three-year statute of limitations.

In response to Monsanto's argument that the District allegedly sustained its injury in 1969 when Monsanto allegedly engaged in deceptive practices "in connection with the sale" of its product, the District states that it was impossible to file suit by 1972 because it had not yet incurred damages. Instead, the District asserts that:

> Although the District alleges fraudulent conduct on behalf of Monsanto dating back to the 1930's, the District did not suffer injury to its property until it incurred damages as a result of PCB contamination in October of 2004. Once again, the District is not suing for pure abatement costs. The District is primarily suing to recover damages related to remediating PCB contaminated soils and materials from its property.

Pl.'s Memo. Law at 12.

By confusing the concept of "damages" with "injury," the District is essentially seeking application of the discovery rule to its General Business Law claims. According to the District's allegations, it sustained "injury" – property damage – the moment that PCBs were installed in the building in 1969. The fact that the District did not incur abatement cost "damages" until after it first allegedly discovered the PCBs in 2004 does not change the fact that the injury occurred in 1969. Rather, the fact that the District did not incur damages to abate the caulking until after the District allegedly discovered PCBs in 2004 would be relevant, at best, to the discovery rule which is inapplicable as a matter of law to General Business Law claims. See Wender v. Gilberg Agency, 716 N.Y.S.2d 40, 41-42 (1st Dep't 2000); Russo v. Mass. Mut. Life Ins. Co., 711 N.Y.S.2d 254, 255-56 (3d Dep't 2000), rev'd other grounds, Gaidon, 750 N.E.2d at 1084.

It is of no moment that the District agues in its brief that "the District is not suing for pure abatement costs," but "is primarily suing to recover damages relating to remediating PCB contaminated soils and materials from its property," Pl.'s Brief at 12. First, as previously discussed, the District's claim for damages for PCB-related migration in the soil and sidewalk concrete fails because not supported by any factual allegations in the Amended Complaint. Second, it is not enough for the District to allege that it did not incur *damages* for soil remediation until 2004. Rather, because the discovery rule is inapplicable, the District must allege that the "injury" – the migration of PCBs – did not occur until 2004. Because the District has not alleged, nor can allege, that the alleged migration magically did not occur until October 2004, it has failed to establish that its alleged injury did not occur beyond the three-year statute of limitations. The District's General Business Law claims are, therefore, time-barred as a matter of law.

## POINT II

**II.    THE DISTRICT'S AMENDED COMPLAINT LACKS ALLEGATIONS OF ESSENTIAL ELEMENTS REQUIRED FOR EACH OF ITS CAUSES OF ACTION**

Without waiving the arguments set forth in Monsanto's principal brief, Monsanto replies herein to discrete misstatements of fact and law set forth in the District's response.

### A.    Negligence and Recklessness

The District acknowledges that its negligence/recklessness claims are limited to design defect and failure-to-warn theories. Notwithstanding its Amended Complaint, the District has failed to plead essential elements of both theories.

With respect to its design defect theory, the District contends that it has cured its failure to plead a safe feasible alternative design by amending its complaint to include an allegation that "Monsanto Co. could have manufactured its PCBs in a manner that would eliminate the tendency of PCBs to escape or mobilize from the products the chemical was introduced into . . . ." Am. Compl. ¶ 130. This conclusory allegation is insufficient to establish the potential for alternative designs, the costs of alternative designs, and the product's usefulness as designed at the time of marketing, 1969, as required under New York law. See Adams v. Genie Indus. Inc., 2007 N.Y. Misc. LEXIS 323, *8 (N.Y. Co. Jan. 8, 2007); see also Cover v. Cohen, 461 N.E.2d 864, 866 (N.Y. 1984). The District's design defect claim fails, therefore, as a matter of law.

Further, the relative volatility of PCBs, like all other chemicals, is a question of their vapor pressure. See <<http://www.chem.purdue.edu/gchelp/liquids/vpress.html>>. A chemical's vapor pressure is an inherent property that defines, in part, that chemical. See id. Thus, the District's claim that Monsanto's PCBs should have had a lower vapor pressure is little more than a non-cognizable claim that PCBs should be something other than PCBs. Since it is impossible

to manufacture PCBs with anything other than their definitional vapor pressures, the District's design defect claim is illusory and must fail.

With respect to its failure-to-warn claim, the District alleges that Pecora manufactured the caulk but does not cite any law supporting a duty on the part of Monsanto to warn Pecora's customers. Instead, the District relies only on general notions of foreseeability, but does not even allege in its Amended Complaint that the District (as opposed to a construction contractor or subcontractor) was Pecora's customer. When Pecora's customer is not even known to the District, the imposition of a duty on Monsanto to warn would have been impossible for Monsanto to fulfill. Accordingly, the District has not alleged any law or facts that establish that any duty on the part of Monsanto to warn extended ultimately to the District.

More fundamentally, the District essentially admits that this is not a failure-to-warn case because it does not allege that any warning would have made PCBs safe for use in the building. See Liriano v. Hobart Corp., 700 N.E.2d 303, 305 (N.Y. 1998). Rather, the District alleges that, with an appropriate warning, the District would not have allowed the use of PCBs on its property at all. Pl.'s Memo. Law at 14. In other words, the District is asserting that *no* warning would have made PCBs safe when used as intended by the District. Because the District is asserting that the intended use itself caused harm, the District is alleging that a design defect, not any failure-to-warn, caused its damages.

Because, even after its Amended Complaint, the District has not adequately pleaded facts establishing that PCBs were unreasonably dangerous, and that Monsanto had a duty to warn the District or that any such failure to warn caused harm, the District's negligence/recklessness claims should be dismissed.

### B.  Strict Products Liability – Manufacturing Defect

In response to Monsanto's argument that the District's manufacturing defect claim pertained only to caulk and alleged no manufacturing defect in PCBs, the District has amended it complaint to include an allegation that "PCBs . . . contained a manufacturing defect because they were *designed in a manner* that allowed the PCB molecules to escape, volatize, or mobilize thereby contaminating the District's buildings and property."  Am. Compl. ¶ 113 (emphasis added).  The Amended Complaint clearly does not cure the defect in the District's manufacturing defect claim because it pertains solely to design defect and does not allege that the PCBs deviated in any way from Monsanto's design or performance standards, and that such an unintended flaw caused injury, as required to state a claim for manufacturing defect.  See Topliff v. Wal-Mart Stores E. LP, 2007 U.S. Dist. LEXIS 20533, *84-*85 (N.D.N.Y. Mar. 22, 2007).  The District's manufacturing defect claim should, therefore, be dismissed.

### C.  Strict Products Liability – Failure to Warn

The District's failure-to-warn strict liability claim fails for the same reasons as its negligence claim.  In support of its claim that Monsanto had a duty to warn Pecora's customers, the District relies only on inapposite case law involving a design defect claim, Brumbaugh v. Ceji, Inc., 547 N.Y.S.2d 699 (3d Dep't 1989), and product malfunction claim, Icelandic Airlines, Inc. v. Canadair, Ltd., 428 N.Y.S.2d 393 (N.Y. Co. 1980).  The District has, thus, failed to establish as a matter of fact and law that Monsanto had a duty to warn and that such a duty extended ultimately to the District.  Further, because the District does not allege that any warning would have made PCBs safe for use in the school, the District is asserting that a design defect, not a failure to warn, caused the harm.  The District's failure-to-warn claim should, therefore, be dismissed.

### D.     Strict Products Liability – Design Defect

The District's design defect strict liability claim fails for the same reasons as its negligence claim. As previously discussed, the District's conclusory allegation that "[Monsanto] could have manufactured its PCBs in a manner that would eliminate the tendency of PCBs to escape or mobilize from the products the chemical was introduced into," Am. Compl. ¶ 130, is legally insufficient to establish the potential for alternative designs, the costs of alternative designs, and the product's usefulness as designed at the time of marketing, 1969, as required under New York law. Galletta v. Valmet, Inc., 2007 U.S. Dist. LEXIS 23665, *13 (N.D.N.Y. Mar.30, 2007); Cover, 461 N.E.2d at 866. Moreover, as previously discussed, the District's claim fails because it is not possible to design PCBs with a different vapor pressure because vapor pressure is an inherent characteristic of all chemicals, including PCBs. The District's strict liability design defect claim should, therefore, be dismissed.

### E.     General Business Law

In its Amended Complaint, the District continues to allege that Monsanto violated Sections 349 and 350 of New York's General Business Law. The District, however, has failed to plead the requisite consumer oriented conduct required to state a claim under Section 349 and makes no argument whatsoever in support of its Section 350 claim.

The District does not dispute that it must establish "consumer oriented" conduct on the part of Monsanto to state a claim under Section 349. However, in an attempt to cure its failure to plead consumer oriented conduct, the District has amended its complaint to add only the conclusory allegation that it is a "consumer." Am. Compl. ¶ 136. The District's allegation is insufficient to establish consumer oriented conduct for several reasons. First, as a matter of law, the District is not a "consumer." See, e.g., New York Univ. v. Continental Ins. Co., 662 N.E.2d 763, 770 (N.Y. 1995) (refusing to grant protection of act to university). Second, even if the

District were a "consumer" in theory, it was not the target of Monsanto's conduct. Instead, as alleged by the District, Monsanto sold PCBs to Pecora. The sale of a specialty industrial chemical like PCBs by Monsanto to a sophisticated product manufacturer such as Pecora does not constitute consumer oriented conduct as a matter of law. See, e.g., St. Patrick's Home for the Aged and Infirm v. Laticrete Int'l, Inc., 696 N.Y.S.2d 117, 122 (1st Dep't 1999) (refusing to apply action to transaction between building construction and supply companies). Third, only the District, which is not a consumer, allegedly sustained harm. The fact that the general public may have been tangentially harmed by Monsanto's conduct does not elevate the District's dispute with Monsanto into a consumer oriented claim cognizable under Section 349. See, e.g., In re Rezulin Products Liability Litigation, 392 F. Supp. 2d 597, 613-14 (S.D.N.Y. 2005) (refusing to apply act to health benefit plan despite ultimate harm to patients); U.W. Marx, Inc. v. Bonded Concrete, Inc., 776 N.Y.S. 2d 617, 620 (3d Dep't. 2004) (refusing to apply act to general contractor at public school despite ultimate harm to public). Accordingly, the District's Section 349 claim should be dismissed.

The District continues to include a conclusory allegation that Monsanto violated Section 350 of the General Business law in its Amended Complaint, but has not identified any misleading advertisements or alleged that the District was misled or deceived by any such advertisements as required to state a claim under Section 350, Cartier, Inc. v. Four Star Jewelry Creations, Inc., 348 F. Supp. 2d 217, 252 (S.D.N.Y. 2004). The District has, moreover, waived its Section 350 claim by failing to make any argument in support of it in response to Monsanto's motion to dismiss. Handberry v. Thompson, 446 F.3d 335, 342 (2d Cir. 2006). Accordingly, the District's Section 350 claim should be dismissed.

### F.     Declaratory Judgment

Despite Monsanto's clear arguments against the District's indemnification claims for past and future damages, the District mistakenly characterizes Monsanto's Motion to Dismiss as pertaining only to the District's hypothetical future claims and not the costs that it has already incurred for PCB remediation. Pl.'s Memo. Law at 22. Because the District does not cite any law or factual allegations supporting either its indemnification claims for past or future damages, all of its indemnification claims should be dismissed.

As set forth in Monsanto's Motion to Dismiss, all of the District's indemnification claims fail because the District has not established that it discharged a duty that Monsanto owed to a third-party, the District has been held liable to a third-party, or that it has been held liable to a third party though no fault of its own. See Dfs.' Memo. Law at 20-21 (citing Germantown Cent. Sch. Dist. v. Clark, Clark, Mills & Gilson, AIA, 743 N.Y.S.2d 599, 605 (3d Dep't 2002), aff'd, 791 N.E.2d 398 (N.Y. 2003) (other grounds); King v. Audax Constr. Corp., 2007 U.S. Dist. LEXIS 65682 (E.D.N.Y. Sept. 5, 2007)).

Additionally, as the District effectively concedes, the District's claim for indemnification for hypothetical future injuries is not ripe because it is not based on an actual loss. McDermott v. City of New York, 406 N.E.2d 460, 461 (N.Y. 1980).

Accordingly, all of the District's claims for indemnification – whether for costs already incurred or hypothetical future losses – should be dismissed.

### G.     Punitive Damages

Notwithstanding Court of Appeals precedent setting the high bar of "gross," "morally reprehensible," and "wanton dishonesty as to imply criminal indifference to civil obligations," for punitive damages, New York Univ. v. Continental Ins. Co., 662 N.E.2d 763, 767 (N.Y. 1995), the District contends that it need only show mere recklessness. However, for recklessness

to warrant punitive damages, it must evince a "high degree of moral turpitude" and "betoken[] an improper motive or vindictiveness" or a "wanton disregard of safety or rights." Ross v. Louise Wire Servs., Inc., 8 N.Y.3d 478, 489 (N.Y. 2007).

Regardless of the District's dilution of the legal standard for punitive damages, it has simply failed to allege conduct that evinces even recklessness on the part of Monsanto. The District erroneously attempts to rely on future discovery when only the allegations of its complaint are relevant on a motion to dismiss. See Bildstein v. Mastercard Int'l Inc., 329 F. Supp. 2d 410, 413 (S.D.N.Y. 2004). The District otherwise points only to allegations in its original complaint pertaining to the effects of PCBs in high dose animal studies, prolonged or acute occupational and industrial exposures, and industrial environmental discharge, Compl. ¶¶ 23-33, which do not establish that PCBs were unreasonably dangerous for use in caulking materials in the first instance. The District's allegations certainly do not establish that, in 1969, Monsanto was aware or should have been aware that PCBs were unreasonably dangerous for use in caulking materials, much less that Monsanto recklessly acted in intentional disregard of the rights of others in selling PCBs for use in caulking materials. See, e.g., St. Patrick's Home, 696 N.Y.S.2d at 124 (dismissing punitive damage claim against manufacturer of defective exterior wall panels notwithstanding representation that product was suitable for intended use and concealment of alleged complaints about product). The District's prayer for punitive damages should, therefore, be stricken.

## CONCLUSION

Based on the foregoing and the reasons set forth in Monsanto's principal brief, Monsanto respectfully requests this Court to grant this motion and dismiss the District's Amended Complaint with prejudice, consistent with the attached revised proposed form of order.

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

By: s/ Robert Wright
ROBERT WRIGHT (RW- 0971)
THOMAS M. GOUTMAN (*Admitted Pro Hac Vice*)
**WHITE AND WILLIAMS LLP**
One Penn Plaza, Suite 1801
New York, New York 10119
Phone: (212) 244-9500
Email: wrightr@whiteandwilliams.com
*Attorneys for Defendants
Monsanto Company and
Pharmacia Corporation*