UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
YORKTOWN CENTRAL
SCHOOL DISTRICT,                                    Civil Action No. 07-CIV-8648
                                                    (SCR)

        Plaintiff,


        vs.                                         ECF CASE

MONSANTO COMPANY,
PHARMACIA CORPORATION,
PECORA CORPORATION AND
JOHN DOES 1-20.

        Defendants.

------------------------------------------------------x


**PLAINTIFF'S SURREPLY IN OPPOSITION OF MOTION TO DISMISS
AMENDED COMPLAINT**


        Kevin J. Madonna (KM-5595)
        Robert F. Kennedy, Jr. (RK-5906)
        Kennedy & Madonna, LLP
        48 Dewitt Mills Road
        Hurley, New York 12443
        845-331-7514
        kmadonna@kennedymadonna.com
        *Attorneys for Plaintiff Yorktown School
        District*

Plaintiff, Yorktown Central School District ("District" or "Plaintiff"), respectfully submits this surreply to Defendant's reply in support of Defendants' Monsanto Company and Pharmacia Corporation (collectively "Monsanto") Motion to Dismiss Amended Complaint and Pecora Corporation's (Pecora) Motion to Dismiss Amended Complaint. Pecora has joined and incorporated all arguments set forth by Monsanto into Pecora's motion. The District, therefore, has filed one joint surreply to both motions.

## POINT I

**I.    Plaintiff's Causes of Action Are Not Time Barred As A Matter of Law**

    **A.    Negligence/Recklessness and Strict Liability**

Defendants continue to argue to this Court that the District's negligence/recklessness and strict liability claims are time-barred and should be dismissed. Specifically, they claim that the District's claims cannot be saved by N.Y. C.P.L.R. § 214-c. In the continuation of this argument, Defendants raise no new support, but rather, rely on repetition and avoidance. Defendant's arguments are without merit and should be denied.

Defendants spuriously claim "the District alleges that the PCBs in the soil came from caulk left on the ground during the 2003 window renovation project." Defs' Reply at 2. The District has made no such allegation and would disagree with such an allegation. In fact, a complete reading of the District's Amended Complaint suggests otherwise when one takes into account that the Westchester County Department of Health detected PCB soil contamination in depths up to two feet. See Am. Compl. ¶¶ 77, 81. In reality, and as articulated in the District's Amended Complaint, and surely known to Defendants, it is well understood that PCBs contaminate surrounding areas via

2

volatilization and mobilization. See Am. Comp. ¶¶ 20, 113. Moreover, PCB contaminated soil was found under windows that had not been replaced during the District's 2003 window replacement which clearly demonstrates that "the passage of time produced a change in the consequence of the presence of the PCB containing products," Germantown Cent. Sch. Dist. v. Clark, Clark, Millis & Gilson, AIA, 791 N.E.2d 398 (N.Y. 2003), which resulted in soil contamination under windows containing the product and was not from "caulk left on the ground."

In making their argument, Defendants continue to misconstrue the application of Germantown to the District's case. The essential question, as posed by the Court in Germantown, is whether the passage of time produced a change in the consequence of the presence of the PCB containing products. Based on the facts alleged in the District's Complaint, this Court must answer in the affirmative. Unlike the Plaintiff in Germantown, "there is [an] allegation by plaintiff that [PCBs] migrated to a different location [and] became airborne." Id. Surely the volatilization and mobilization of PCBs from caulking materials into surrounding soils and concrete is "analogous to hazardous waste or chemical spill contamination cases where the property damage results from the seepage or infiltration of a toxic foreign substance over time." Id. This is exactly the type of case envisioned by the court in Germantown that should be granted the protections of Section 214-c.

### B. General Business Law

The District renews all argument and support cited in its response brief.

**POINT II**

II.  **The District Has Properly Plead Each Of Its Causes Of Action**

    A.  **Negligence and Recklessness**

The District incorporates by reference the arguments set forth in their response brief.  In the second section of their reply, Defendants have offered a series of regurgitated and nonsensical arguments that provide little assistance to the Court. These arguments are without merit and should be denied.

Defendants maintain that the District's allegations relating to an alternative design for PCBs and PCB containing products is inadequate and must fail. The District alleged that an alternative design would include chemical properties that are less prone to escape or mobilization. Admitting that the relative volatility is a design aspect so integral to the manufacturer of PCBs, Defendants claim that it is impossible to make them any other way. Defs' Reply at 5.  The District disputes these conclusions and has properly plead that alternative designs were available which is sufficient to withstand Defendants' motion.  With respect to the District's failure to warn claim, the Defendants have raised very little of substance which needs to be addressed. Rather than duplicating prior arguments and support in response to Defendants' general commentary, the District renews all argument and support cited in its response brief.

    B.  **Strict Products Liability – Manufacturing Defect**

The District's complaint has more than adequately plead a viable manufacturing defect claim against both Monsanto and Pecora and the Defendants' continued arguments to the contrary should be rejected.  To make a *prima facie* case for a manufacturing defect claim, a plaintiff must plead that the defect existed when the product left the

4

defendants' control, and that the product did not perform as intended during reasonable use. Wesp v. Carl Zeiss, Inc., 783 N.Y.S.2d 439, 442 (4th Dep't. 2004). The fact that the product malfunctioned during normal use will permit the jury to infer that it was defective when it left the manufacturer's hands. George Larkin Trucking Co. v. Lisbon Tire Mart, Inc., 620 N.Y.S.2d 654 (4th Dep't 1994) (citations omitted).

The District alleges that Pecora's caulking product contained a manufacturing defect when it left Pecora's control because it contained PCBs which have escaped into the environment causing significant damage to the District' property. Am. Compl. ¶¶ 107-11. Pecora's caulking product was clearly not intended to contaminate surrounding soils and masonry and therefore did not perform as intended. The District has also plead that Monsanto's PCBs were defective when they left Monsanto's control and did not perform as intended because they escaped from Pecora's caulking product thereby contaminating the District's property. Id. ¶¶ 112, 113. Again, it is assumed that Monsanto did not intend for its PCBs to contaminate everything within a 20 foot radius of it product. Moreover, the District has alleged that Monsanto was fully aware of the mobility characteristics of its PCB product, that its product was contaminating the environment on a widespread basis and that despite this knowledge, continued to flood the marketplace with its PCBs for the sole purpose of generating profits at the expense of the public health and safety. Id. ¶¶ 29-42. For example, a Monsanto committee stated the following in 1969:

> The committee believes there is little probability that any action that can be taken will prevent the growing incrimination of specific [PCBs] (the higher chlorinated - e.g. Aroclors 1254 and 1260) as nearly global environmental contaminants leading to contamination of human food (particularly fish), the killing of some marine species (shrimp), and the possible extinction of several species of fish-eating birds. ***There are,***

5

> *however, a number of actions which must be undertaken in order to prolong the manufacture, sale and use of these particular Aroclors as well as to protect the continued use of other members of the Aroclor series*.

Id. ¶ 35 (emphasis added).

The District's allegations in its Amended Complaint clearly support its claim for manufacturing defect against both Defendants and Defendants' motion should be denied.

### C. Strict Products Liability – Failure to Warn

In support of their motion to dismiss District's strict liability failure to warn Claims, Defendants continue to argue that they owed no duty to the District. Even after this second opportunity to provide the court with guidance on the subject, they have failed to offer a single case supporting their position. The District renews all arguments and support cited in its response brief.

### D. Strict Products Liability – Design Defect

Defendants argue that the District has not properly identified an alternative design and therefore its strict liability design defect claim should fail. Defendants' argument is without merit and should be denied. The District has plead adequate facts necessary to survive Defendants' motion to dismiss. The District renews all arguments and support cited in its response brief.

### E. General Business Law

Defendants erroneously claim that the District amended its complaint "in an attempt to cure its failure to plead consumer oriented conduct . . . ." The District has done no such thing. Paragraph 136 in the District's Amended Complaint is identical to paragraph 156 in the District's original Complaint. The District renews all arguments and support cited in its response brief.

6

**F.     Declaratory Judgment**

The District renews all arguments and support cited in its response brief.

**G.     Punitive Damages**

Defendants' continued argument that flooding the marketplace with a known toxic chemical for the purpose of generating profits does not warrant the imposition of punitive damages must be rejected. The District has plainly plead the requisite facts necessary to withstand Defendant's motion. For example, the District has plead that Monsanto was aware of the toxicity of PCBs as early as 1930, that it manipulated scientific studies in an attempt to understate the toxicity of PCBs and created a campaign to ensure the continued production of "this very profitable series of compounds" despite "the possible extinction of several species of fish-eating birds." Am. Compl. §§ 29-39. The District renews all arguments and support cited in its response brief and Defendants' motion should be denied.

## CONCLUSION

For all of the foregoing reasons, the District respectfully urges this Court to deny the relief sought by Defendants.

Dated: April 4, 2008              Respectfully submitted,

<div style="margin-left: 50%">

Kevin Madonna /s/
Kevin J. Madonna (KM-5595)
Robert F. Kennedy, Jr. (RK-5906)
Kennedy & Madonna, LLP
48 Dewitt Mills Road
Hurley, New York 12443
845-331-7514
kmadonna@kennedymadonna.com
*Attorneys for Plaintiff Yorktown School District*

</div>