UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| YORKTOWN CENTRAL SCHOOL DISTRICT, | : | |
| | : | |
| **Plaintiff,** | : | **07 Civ. 8648 (SCR)** |
| | : | |
| *v.* | : | **MEMORANDUM DECISION** |
| | : | **AND ORDER** |
| MONSANTO COMPANY, PHARMACIA | : | |
| CORPORATION, PECORA CORPORATION, | : | |
| and JOHN DOES 1-20, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

---

**STEPHEN C. ROBINSON, United States District Judge.**

Plaintiff, Yorktown Central School District (the "School District"), filed this action

against Monsanto Company, Pharmacia Corporation, Pecora Corporation, and numerous

unnamed defendants (collectively, the "defendants").[1]  The School District's claims are based

upon its discovery, in 2004 and 2005, that the French Hill Elementary School ("French Hill")

was suffused with Polyclorinated Biphenyls ("PCBs"), an outlawed carcinogen.  The School

District's First Amended Complaint ("Amended Complaint") contains the following claims:  (1)

negligence and recklessness; (2) strict products liability for manufacturing defect; (3) strict

products liability for failure to warn; (4) strict products liability for design defect; (5) unfair

business practices, in violation of New York General Business Law §§ 349-350; and (6)

declaratory judgment of indemnification under 28 U.S.C. §2201.  The School District seeks

---

[1] Because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because the parties are diverse, this Court has jurisdiction under 28 U.S.C. § 1332.  Yorktown is a school district existing under the laws of New York.  Monsanto is a Delaware corporation with its principal place of business in Missouri; Pharmacia is a Delaware corporation with its principal place of business in New Jerrsey; Pecora is a Pennsylvania corporation with its principal place of business in Pennsylvania.

compensatory and punitive damages.   The defendants have moved to dismiss the School District's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

For the reasons set forth in this opinion, the defendants' motions to dismiss the Amended Complaint are granted in part and denied in part.   Given the School District's filing of an Amended Complaint and withdrawing numerous claims contained in the original Complaint, the defendants' first motions to dismiss with respect to those withdrawn claims are denied as moot.

# I

## BACKGROUND

### A. Facts

In 2003, the School District commenced a renovation project of the French Hill School building.  French Hill was constructed in 1969 using materials containing PCBs,[2] including brick mortar caulking, sidewalk mortar caulking, and window and door sealant caulking.  As part of the renovation project, French Hill's windows and window caulking were replaced.  During the project, a Yorktown resident discovered a piece of window caulking on the ground, and without the School District's knowledge, submitted it for analysis.  The results were provided to the Westchester County Department of Health ("WCDOH").  On October 8, 2004, the WCDOH issued a report to the School District indicating that there were elevated levels of PCBs in window caulking from French Hill.  Subsequent to receiving the WCDOH's report, the School District removed all of French Hill's window caulking, and it conducted its own tests of the

---

[2] PCBs are mixtures of up to 209 individual chlorinated compounds manufactured by Monsanto Chemical Company and its successor, Monsanto Company, from 1935 to 1971. Once in the environment, PCBs do not readily break down and therefore remain extant for long periods of time.  PCBs easily cycle between air, water, and soil and are present as solid particles or as vapor in air.  PCBs also may mobilize from caulking, masonry, concrete, and brick containing PCBs and thus contaminate the perimeter of affected buildings.

excised material.  These tests confirmed that the window caulking from French Hill contained elevated levels of PCBs in violation of federal regulations.

Federal regulations prohibit the use of PCB materials in which PCB concentrations exceed fifty parts per million ("ppm").  In addition, the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2601 et seq., prohibits the use of PCBs except when totally enclosed.  PCBs in caulk is not totally enclosed, and therefore do not comply with the TSCA.  A letter dated July 26, 2007, issued by the Environmental Protection Agency ("EPA") states that "even though this caulk was applied before the regulations were developed, the caulk continues to serve its originally-intended purpose . . . [t]hus the [School District] is continuing to make use of the PCB-containing caulk," which, according to the EPA, violated TSCA and EPA regulations.  First Amended Complaint ("Am. Compl.") ¶ 63.

The PCBs contained in these caulking materials subsequently migrated into the air and were deposited in the soil surrounding French Hill.  In January 2005, the WCDOH performed an independent soil investigation in the area where the windows were replaced.  PCBs were present in the soil at levels significantly above one ppm, the clean up guidance level set by the New York State Department of Environmental Conservation ("NYSDEC"); PCBs were detected in varying levels in the soil, including up to two feet deep.  As a result of this discovery, the WCDOH directed the School District to submit a work plan for the removal of this soil.  On August 5, 2005, the School District removed approximately 591 cubic yards of soil.  On August 30, 2005, the School District conducted "wipe tests" of the French Hill buildings, which revealed that there were building surfaces that contained levels of PCBs as high as 22,700 ppm.

As part of a French Hill construction project undertaken during the summer of 2007, testing was performed on the sidewalk expansion joint caulking to determine the presence of

07 Civ. 8648 (SCR)                                                                          4

PCBs. As a result of these tests, PCB abatement work was performed on the sidewalks at the French Hill campus. Approximately, 180 linear feet of PCB contaminated sidewalk expansion joint caulking was removed; in addition the School District removed approximately one foot of concrete on either side of the sidewalk expansion joint caulking.

The School District alleges that Monsanto, as the exclusive manufacturer of PCBs in the United States, knew that prolonged and excessive exposure to PCBs might cause liver damage in humans and animals. For example, a Monsanto memorandum dated September 20, 1955, stated: "We know Aroclors [PCBs] are toxic but the actual limit has not been precisely defined." Am. Compl. ¶ 30. Another Monsanto memorandum issued in the 1950s opined that eating lunches in the manufacturing process department, including those in which PCBs were manufactured, should be prohibited. In late 1968, Monsanto received an initial report that people in Japan had become ill from eating rice oil contaminated with Japanese manufactured PCBs.

A Monsanto document dated October 2, 1969, contained the following statements: "The objective of the committee was to recommend action that will: 1. Protect continued sales and profits of Aroclors; 2. Permit continued development of new uses and sales, and; 3. Protect the image of the Organic Division and the Corporation as members of the business community recognizing their responsibilities to prevent and/or control contamination of the global ecosystem." Am. Compl. ¶ 34. The document also contains the following statements:

> The committee believes there is little probability that any action that can be taken will prevent the growing incrimination of specific [PCBs] (the higher chlorinated – e.g. Aroclors 1254 and 1260) as nearly global environmental contaminants leading to contamination of human food (particularly fish), the killing of some marine species (shrimp), and the possible extinction of several species of fish-eating birds. There are, however, a number of actions which must be undertaken in order to prolong the manufacture, sale and use of these particular Aroclors as well as to protect the continued use of other members of the Aroclor series.

07 Civ. 8648 (SCR)                                                                                    5

> The committee recognizes the restrictions placed on those
> currently involved by mandates to operate within normal or
> proposed reduced budgets. It should be clear, however, that the
> product grounds, the Division and the Corporation are faced with
> an extraordinary situation. There cannot be too much emphasis
> given to the threat of curtailment or outright discontinuance of the
> manufacture and sales of this very profitable series of compounds.
> If the products, the Division and the Corporation are to be
> adequately protected, adequate funding is necessary.

Am. Compl. ¶¶ 35-36. The School District thus alleges that Monsanto knew that PCBs were

hazardous but nevertheless manufactured and profited from them for more than forty years.


**B. Procedural Posture**

The School District filed its original Complaint on October 5, 2007. Both Monsanto and

Pecora, in lieu of filing an answer, moved to dismiss the School District's Complaint. The

School District opposed Monsanto's and Pecora's motions to dismiss and also filed an Amended

Complaint. In its Amended Complaint, the School District withdrew numerous claims, including

misrepresentation and fraudulent concealment, breach of express warranty, breach of implied

warranty of fitness, and breach of implied warranty of merchantability. The Amended

Complaint asserts the following claims: (1) negligence and recklessness; (2) strict products

liability for manufacturing defect; (3) strict products liability for failure to warn; (4) strict

products liability for design defect; (5) unfair business practices, in violation of New York

General Business Law §§ 349-350; and (6) declaratory judgment of indemnification under 28

U.S.C. §2201. The School District seeks compensatory and punitive damages relating to its

remediation of the ground, soil, building surfaces, and sidewalks in and around the French Hill

building.

## II

## DISCUSSION

### A.  Standard of Review

A motion to dismiss must granted if the complaint "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. PRO. 12(b)(6).  In deciding a motion to dismiss, a court must "'accept as true the factual allegations made in the complaint and draw all inferences in favor of the plaintiffs.'" *Elektra Entm't Group, Inc. v. Barker*, 551 F. Supp. 2d 234, 238 (S.D.N.Y. 2008) (quoting *Grandon v. Merril Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998)).  Ultimately, the purpose of Rule 8 is "to give fair notice of a claim and the grounds upon which it rests so that the opposing party may identify the nature of the case, respond to the complaint, and prepare for trial." *Id.* (internal quotation marks and citations omitted).

Recently, in *Bell Atlantic v. Twombly*, the Supreme Court held that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 127 S. Ct. 1955, 1964-65 (2007).  A plaintiff therefore must include sufficient factual allegations to "raise a right to relief above the speculative level," *id.* at 1965, that is, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," *id.* at 1974.  The Second Circuit has explained that, in its view, "the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render a claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).  This flexible, plausibility standard has been applied to copyright and trademark

infringement cases. *See, e.g.*, *Thomas Publ'g Co. v. Tech. Evaluation Ctrs., Inc.*, No. 06 Civ. 14212, 2007 WL 2193964, *2 (S.D.N.Y. July 27, 2007).

**B.  The School District's Amended Complaint**

After the defendants filed their motions to dismiss, the School District filed an Amended Complaint simultaneously with its memorandum of law in opposition to the defendants' motions; as noted earlier in this opinion, the Amended Complaint withdrew numerous claims that had been asserted in the original Complaint.  Rule 15(a)(1) of the Federal Rules of Civil Procedure provides, in relevant part, that "[a] party may amend its pleading once as a matter of course . . . before being served with a responsive pleading."  In this case, at the time that the School District filed its Amended Complaint, the defendants had not filed an answer; moreover, the defendants' motion to dismiss is not considered a pleading, *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 241 (2d Cir. 2007).  The School District therefore was entitled to file an Amended Complaint as a matter of course.  *See* FED. R. CIV. P. 15(a).  In light of the School District's withdrawal of numerous claims in its Amended Complaint, the defendants' motions to dismiss with respect to those withdrawn claims are denied as moot.

**C.  The Defendants' Statute of Limitations Defenses**

Monsanto has moved to dismiss the School District's claims of negligence, recklessness, strict products liability, and deceptive business practices as time barred under New York's statute of limitations; Pecora has joined Monsanto's motion.  The Court shall address each of the defendants' arguments in turn.

### 1. Claims for Negligence, Recklessness, and Strict Products Liability

The School District has asserted claims of negligence, recklessness, and strict products liability against the defendants. Whether the School District's claims are timely, the parties agree, depends on the applicability of New York's discovery rule. *See* N.Y. C.P.L.R. § 214-c. The defendants contend that, under New York case law, the discovery rule is inapplicable because the School District "does not allege that the passage of time has produced any change in the consequences of the presence of PCBs in the French Hill school buildings, *i.e.*, the [School] District does not allege that the PCBs migrated from the caulking materials or caused any illness." Monsanto's Mem. of Law at 8. The defendants submit that the School District may not recover any costs for abating the PCB caulking materials themselves because the discovery rule only applies to property damage "caused by the toxic substance above and beyond the substance's mere presence in the building." *Id.* at 7. The School District counters by pointing out that it does, in fact, allege that the PCBs in the caulk migrated to the soil and concrete surrounding the French Hill campus. Therefore, the School District contends that, under applicable New York case law, the discovery rule tolled the statute of limitations until October 8, 2004, making its claims of negligence, recklessness, and strict products liability timely.

Under New York law, the "statute of limitations is normally an affirmative defense on which the defendant has the burden of proof." *Bano v. Union Carbide Corp.*, 361 F.3d 696, 710 (2d Cir. 2004) (New York law). When an exception to the statute of limitations is at issue, however, there is authority indicating that the burden is on the plaintiff to establish "evidentiary facts showing that the exception embodied in the statute applies." *Pompa v. Burroughs Wellcome Co.*, 696 N.Y.S.2d 587, 590 (App. Div. 1999); *see also Bano*, 361 F.3d at 710. New York courts have cautioned that, at the motion to dismiss stage, courts must not resolve disputed

issues of material fact in deciding whether the statute of limitations or the discovery rule applies. *See, e.g., Bano*, 361 F.3d at 710 (citing *Glod v. Morrill Press Div. of Engraph, Inc.*, 564 N.Y.S.2d 905, 908 (App. Div. 1990), and *Roman v. Radio Frequency Co.*, 616 N.Y.S.2d 824, 824 (App. Div. 1994)).

In New York, an action to recover damages for an injury to property must be commenced within three years from the date of injury; the date of injury in this case was 1969, the date that the PCB products were installed in French Hill. *See* N.Y. C.P.L.R. § 214(4); *MRI Broadway Rental, Inc. v. U.S. Mineral Prods. Co.*, 704 N.E.2d 550, 551 (N.Y. 1998). There is an exception to this general statutory rule, however:

> Notwithstanding the provisions of section 214, the three year
> period within which an action to recover damages for personal
> injury or injury to property caused by the latent effects of exposure
> to any substance or combination of substances, in any form, upon
> or within the body or upon or within property must be commenced
> shall be computed from the date of discovery of the injury by the
> plaintiff or from the date when through the exercise of reasonable
> diligence such injury should have been discovered by the plaintiff,
> whichever is earlier.

N.Y. C.P.L.R. § 214-c(2). By its very terms, then, the discovery rule does not toll the statute of limitations for *any* property damage caused by exposure to toxic substances—it applies only for property damage "caused by the *latent effects* of exposure" to any toxic substances. *Id.* (emphasis supplied). Indeed, the New York high court has explained that the text of the statute is "consistent with the Legislature's desire to offer recourse where the harm attributable to the toxic substance does not manifest itself until years after the exposure." *Germantown Cent. Sch. Dist. v. Clark, Clark, Millis & Gilson, AIA*, 791 N.E.2d 398, 401 (N.Y. 2003).

In *Germantown*, for example, the issue was whether the discovery rule would apply in a situation where a school district was suing an architectural firm and engineering subcontractor

for professional negligence for failing to perform adequately an asbestos abatement project.  The

Court of Appeals of New York determined that the discovery rule was inapplicable because the

plaintiff was suing only for damages to property from the asbestos, rather than for damages to

property from the latent effects of the asbestos:

> In its complaint, plaintiff alleged that the asbestos remained
> undetected at the abatement site for 13 years after defendants'
> certification of removal.  Although the statute embraces an "injury
> to property," there is no allegation by plaintiff that the asbestos
> migrated to a different location, became airborne or friable, or
> caused illness to any occupants of the building.  Where, as here,
> plaintiff's property damage claim involves no additional damage to
> its building since the original implantation of the harmful
> substance—or, stated another way, where the passage of time has
> produced no change in the consequences of the presence of
> asbestos—the injury cannot be said to have resulted from the latent
> effects of exposure to a toxic substance.  Plaintiff's situation is not
> analogous to hazardous waste or chemical spill contamination
> cases where the property damage results from the seepage or
> infiltration of a toxic foreign substance over time.  Here, the harm
> to plaintiff's property occurred upon installation of the asbestos in
> the building and was constant thereafter.

*Id.* at 400-01 (internal citations omitted).

Turning to the present case, a review of the School District's Amended Complaint reveals

that, in fact, it did allege that some of the property damages for which it seeks recovery stemmed

from the latent effect of PCBs.  For example, it alleges that "[s]cientific studies suggest that

PCBs mobilize from PCB containing caulking thereby contaminated the perimeter of affected

buildings" and, more specifically, that "PCBs migrated from caulking containing PCBs into the

air and were deposited on the [School] District's soil."  Am. Compl. ¶¶ 20, 59; *see also* Am.

Compl. ¶ 21.  The School District also claims that PCBs in the caulking migrated from the

sidewalk expansion joints into the concrete adjacent to the joints and that this required the

School District to remove six-inches of concrete on each side of the join. Am. Compl. ¶¶ 81-83,

85-87. The School District therefore has alleged "property damage . . . [that] involves . . . additional damage to its building since the original implantation of the harmful substance"—that is, the School District alleges that the PCBs "migrated to a different location" and "became airborne or friable," thus causing additional harm to its property. *Germantown Cent. Sch. Dist.*, 791 N.E.2d at 400. Consequently, at this stage of the litigation, the Court must conclude that the discovery rule is applicable insofar as the School District is seeking recovery for property damage resulting from the latent effect of PCBs.[3] *See* N.Y. C.P.L.R. § 214-c(2).

The defendants, however, have an additional argument. They contend that the School District has pled itself out of court because of its own allegations concern the cause of PCBs in the soil. Specifically, the defendants submit: "The [School] District's Amended Complaint specifically alleges that pieces of window caulk removed during the renovation were left on the ground and that it was the soil sample taken from the area where the windows were replaced in which elevated levels of PCBs were found." Monsanto's Mem. of Law at 2 (citing Am. Compl. ¶¶ 67, 72, 75, 78). Because Monsanto was not responsible for the window caulk removal, it contends that the School District may not hold Monsanto responsible for PCB migration from caulk left on the ground as a result of the window replacement project.

The School District's Amended Complaint does provide some support for the defendants' position.[4] In response, however, the School District claims that its pleading should not be construed as alleging that the only soil and concrete that was contaminated was that found under the windows that had caulking replaced; indeed, it claims that PCB contaminated soil was found

---

[3] In response to the defendants' claim that the School District may not recover damages associated with its 2003 window replacement project, *see* Monsanto's Mem. of Law at 22-23, the School District concedes that it is not seeking such damages, *see* Pl. Mem. of Law in Opp'n at 23.

[4] *See* Am. Compl. ¶ 67 ("[S]ubsequent to the windows being replaced, a [Yorktown] resident discovered a piece of window *caulking on the ground* . . . ."); Am. Compl. ¶ 72 ("[T]he District properly removed all window *caulking that was on the ground* outside French Hill . . . ."); Am. Compl. ¶ 75 ("[T]he same individual who had the window caulking tested collected samples from French Hill in the general area where the windows were replaced and sent them for testing.").

under windows that had not been replaced during the 2003 window replacements and that PCB
contamination was detected up to two feet deep in the soil. This argument therefore ultimately
comes down to disputed issues of material fact that may not be resolve at the motion to dismiss
stage.[5] In any event, it does not appear that the School District's pleadings foreclose an
argument that the caulking's age—and any concomitant increase in its volatility or mobilization
due to that age—constitutes a latent effect for which recovery is possible under section 214-c(2).
*See* Am. Compl. ¶¶ 18-23.

Accordingly, the Court denies the defendants' motion to dismiss as time-barred the
School District's claims for negligence, recklessness, and strict products liability.


### 2. Claim under the New York General Business Law

The School District has asserted claims under New York General Business Law §§ 349-
350. The basis for its claims is that the defendants knew or should have known that PCBs were
not reasonably safe and that its acts, representations, and/or omissions constituted deceptive
practices in connection with the sale of its products. The defendants contend that the School
District's claims under New York's General Business Law are untimely because the discovery
rule is inapplicable to these sorts of claims, and, absent the discovery rule, the statute of
limitations expired in 1972. In opposition, the School District believes that its claims are timely
because it "did not suffer injury to its property until it incurred damages as a result of PCB
contamination in October of 2004." Pl. Mem. of Law in Opp'n at 12.

---

[5] Similarly, the defendants' other argument—that the School District's claim for damages for the removal
of concrete should be dismissed because it was part of the caulk remediation—depends on the resolution of a
disputed issue of fact. The School District has alleged that the concrete removal was required as a result of PCBs
migrating into the rest of the concrete from the caulk in the sidewalk expansion joints. Am. Compl. ¶ 88-89.

The discovery rule indeed is inapplicable to claims asserted under the General Business Law. *See, e.g.*, *Wender v. Gilberg Agency*, 716 N.Y.S.2d 40, 41 (App. Div. 2000) ("Plaintiff's claims under General Business Law § 349, however, are time-barred as the three-year limitations period set forth in C.P.L.R. 214(2) applies to causes of action predicated thereon and the date of discovery rule is not applicable and cannot serve to extend that limitations period."); *see also In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, Nos. 04cv-2389, 04-cv-3417, 04-cv-5424, 2007 WL 1601491, at *14 (S.D.N.Y. June 4, 2007) ("No discovery rule is applicable to section 349 claims." (citation omitted)). The School District's argument—that it did not incur any injury until it began its cleanup in 2004—conflates injury and damages. The statute of limitations begins to run from the date of "injury," *see* N.Y. C.P.L.R. § 214(4), which, in this case, was the date that the defective product was installed in the building, *see MRI Broadway Rental, Inc.*, 704 N.E.2d at 551 ("[W]e hold that, for [s]tatute of [l]imitations purposes, plaintiff's injury occurred when the asbestos-containing material was installed."). Because the School District has conceded that the PCB materials were installed in French Hill in 1969, *see* Am. Compl. ¶¶ 56-57, the Court must dismiss at time-barred the School District's claims under the General Business Law.

## D. Adequacy of the School District's Pleadings

### 1. Negligence, Recklessness, and Strict Products Liability (Design Defect and Failure to Warn) Claims

The School District asserts that the defendants were negligent and reckless in their failure to warn and in their design of PCBs. The defendants raise numerous arguments in support of their motion to dismiss these claims. First, Monsanto contends that it, as the manufacturer of a component (PCB) of the caulking that was installed in French Hill, owed no duty to warn the

ultimate purchaser (the School District) of the finished product (the caulk). Second, the

defendants submit that dismissal is appropriate because the School District's allegation that there

were safe, feasible alternative designs are too conclusory. Third, the defendants maintain that

the School District cannot assert a negligent failure to warn claim because "the very core of the

[School] District's claim is that under no circumstances could PCBs be used safely and not

require removal." Monsanto's Mem. of Law at 13.

### a.

Monsanto's argument that a manufacturer of a component part has no duty to warn of the

dangers, and is not liable for the defective design, of a component part finds no support in New

York case law. *See Liriano v. Hobart Corp.*, 700 N.E.2d 303, 305 (N.Y. 1998) ("A

manufacturer also has a duty to warn against latent dangers resulting from foreseeable uses of its

product of which it knew or should have known."); *Brumbaugh v. CEJJ, Inc.*, 547 N.Y.S.2d 699,

701 (App. Div. 1989) (explaining that since New York "eliminated the privity requirement in

strict products liability actions brought against manufacturers, the pool of potential defendants

has been judicially expanded to include distributors, retailers, processors of materials and makers

of component parts, or essentially to any one responsible for placing the defective product in the

marketplace"); *McLaughlin v. Mine Safety Appliances Co.*, 181 N.E.2d 430, 433 (N.Y. 1962)

("The duty to warn of latent dangers extends to the original or ultimate purchasers of the product

. . . and to third persons exposed to a foreseeable and unreasonable risk of harm by the failure to

warn."); *Ayala v. V & O Press Co.*, 512 N.Y.S.2d 704, 707 (App. Div. 1987) ("New York

recognizes that a component part manufacturer is exposed to liability where it supplies a

defective part which causes an accident. Liability is recognized under a negligence theory or

under a theory of strict products liability."); *cf.* 63 AM. JUR. 2d *Products Liability* § 1132 ("[A] supplier of component parts containing no latent defect generally has no duty to warn the subsequent assembler or its customers of any danger that may arise after the components are assembled . . . .").[6] Therefore, Monsanto's motion to dismiss the School District's failure-to-warn claim, based on both a strict liability and negligence theory, and its defective design claim is denied.

**b.**

Next, the defendants submit that the School District's failure-to-warn claim fails as a matter of law because the essence of this case is that PCBs are inherently dangerous and unsafe in all circumstances; thus, the School District cannot establish that a warning would have remedied the alleged defect. The defendants' argument is predicated on a mischaracterization of the School District's position. The School District's theory of the case is not necessarily that PCBs are unsafe in all circumstances; for example, the School District's complaint notes that the TSCA does not prohibit the use of PCBs used "in a totally enclosed manner." Am. Compl. ¶ 62. Instead, the School District claims that, for example, had the defendants provided a warning about the dangers of PCBs that are not incorporated into a product in a totally enclosed manner, either it would not have used the caulk or other companies would not have used PCBs in manufacturing caulk, and therefore the School District would not have incurred damage on its property. Consequently, at this point in the litigation, the School District's failure-to-warn claims may not be dismissed.

---

[6] The case upon which Monsanto relies, *Butler v. Interlake Corp.*, 665 N.Y.S.2d 192, 193-94 (App. Div. 1997), merely held that a plaintiff had not adduced sufficient evidence to survive summary judgment where the manufacturer had established that "it generally [did] not know for what specific purpose its component parts [had] been ordered." According to the School District, Monsanto was aware that its PCBs were being used in caulking materials.

**c.**

Finally, with respect to its negligent design defect claim, the School District has alleged:

"At all times, there was a feasible and safer alternative design for [d]efendants' products. For

example, Monsanto Co. could have manufactured its PCBs in a manner that would eliminate the

tendency of PCBs to escape or mobilize from the products the chemical was introduced into and

Pecora Corp. could have designed its caulking product without including PCBs or design its

caulk in a manner that reduced or eliminated the escape or mobilization of PCBs into the

environment." Am. Compl. ¶ 130. Monsanto's argument in response—that the relative

volatility of PCBs is dependent on their vapor pressure, that vapor pressure is an inherent

property that defines a chemical, and that, therefore, it is impossible to manufacture PCBs with a

different vapor pressure—is an exercise in semantics and also inappropriate at the motion to

dismiss stage.

### 2. Strict Products Liability—Manufacturing Defect

The defendants argue that the School District's manufacturing defect claim must be

dismissed because there are no allegations that when the PCBs left Monsanto's control, or when

the caulking left Pecora's control, it "deviate[d] in quality and other performance standards from

all of the other identical units." *Colon v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001)

(citing *Perazone v. Sears, Roebuck & Co.*, 515 N.Y.S.2d 908, 911 (App. Div. 1987)). In its

Amended Complaint, the School District alleges: "PCBs and caulk containing PCBs, at the time

they left [d]efendants' control, contained a manufacturing defect *because they were designed in a*

*manner that allowed* the PCB molecules to escape, volatize, or mobilize thereby contaminating"

the School District's property. Am. Compl. ¶ 113 (emphasis supplied). As evident by the

School District's allegations, the basis for its action is that PCBs, as a class, were incorporated

into the caulking used in French Hill, *not* that *some* of those PCBs "deviate[d] in quality and

other performance standards from all of the other identical units." *Colon*, 199 F. Supp. 2d at 85

(citing *Perazone*, 515 N.Y.S.2d at 911). Indeed, the School District's Amended Complaint is

replete with allegations that all PCBs—not just defective or anomalous PCBs—migrate from

caulking containing PCB. For example, the School District alleges that "[s]cientific studies

suggest that PCBs mobilize from PCB containing caulk thereby contaminating the perimeter of

affected buildings" and that "[s]cientific studies demonstrate that PCBs in caulking migrate from

the caulking into surrounding materials such as brick, masonry, and concrete." Am. Compl. ¶¶

20-21 (citation omitted). The School District's allegation that the TSCA prohibits "the use of

PCBs in any manner other than in a totally enclosed manner" is a further allegation that *all*

PCBs, not just defective PCBs, migrate from caulk into surrounding areas and materials. Am.

Compl. ¶¶ 61-62.

In its surreply, the School District argues that the PCBs in the caulking *must* have

malfunctioned because "Pecora's caulking product was clearly not intended to contaminate

surrounding soils and masonry and therefore did not perform as intended" and because "[i]t is

assumed that Monsanto did not intended for its PCBs to contaminate everything within a 20 foot

radius of it [sic] product." Pl. Surreply in Opp'n at 5. The School District's response is based on

unsubstantiated speculation and unfounded assumptions, *see Bell Atlantic v. Twombly*, 127 S. Ct.

1955, 1964-65, 1974 (2007) (noting that, "[w]hile a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide

the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions" and that a

plaintiff must allege "enough facts to state a claim to relief that is plausible on its face").

07 Civ. 8648 (SCR)                                                                                18

Moreover, these speculative allegations, as already discussed, are inconsistent with the School

District's allegations that all PCBs, rather than just defective or anomalous PCBs, migrate from

caulking containing PCB. Am. Compl. ¶¶ 20-21, 61-62, 113.  Consequently, the defendants'

motion to dismiss the School District's manufacturing defect claim is granted.


### 3. Declaratory Judgment Request

The School District seeks a declaratory judgment declaring that the defendants are

responsible for and shall indemnify it for the costs of investigating and remediating PCB in the

School District's buildings; it also seeks a judgment declaring that the defendants are responsible

for and shall indemnify it for any costs and expenses associated with any actions brought against

the School District by past and current students, teachers, and employees.  Am. Compl. ¶¶ 157-

59.  In its motion to dismiss, the defendants submit that the request seeking indemnification for

hypothetical future injuries are premature, an argument that the School District does not dispute,

*see* Pl. Mem. of Law in Opp'n at 22.  The defendants also contend that the School District's

declaratory relief claim for indemnification must be dismissed because it has not alleged that the

defendants breached, or that the School District discharged, any duty owed to a third party.

The United States Congress has empowered the federal courts, "upon the filing of an

appropriate pleading, [to] declare the rights and other legal relations of any interested party

seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.

Where federal jurisdiction is based upon diversity, the federal courts, under the *Erie* doctrine,[7]

must apply state law on the substantive issues involved in the declaratory action.  *Liberty Mut.*

*Ins. Co. v. Sweeney*, 216 F.2d 209, 210 (3d Cir. 1954); *see also Potomac Ins. Co. v. Stanley*, 281

F.2d 775, 779 (7th Cir. 1960).

--------

[7] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Under New York law, "[a] cause of action for implied indemnification requires a
showing that [the] plaintiff and [the] defendants owed a duty to third parties, and that [the]
plaintiff discharged the duty which, as between [the] plaintiff and [the] defendants, should have
been discharged by [the] defendants." *Germantown Cent. Sch. Dist.*, 791 N.E.2d at 605 n.2
(citing *McDermott v. City of New York*, 406 N.E.2d 460 (N.Y. 1980)).  Such a claim, moreover,
does not accrue until the indemnitee makes a payment. *See McDermott*, 406 N.E.2d at 461; *see
also A.I. Trade Fin., Inc. v. Centro Internationale Handelsbank AG*, 926 F. Supp. 378, 385
(S.D.N.Y. 1996); *Bay Ridge Air Rights, Inc. v. State*, 375 N.E.2d 29, 31 (N.Y. 1978).  In this
case, the School District's declaratory relief claim seeking indemnification is not based on
damages that the School District has incurred in discharging any duty to a third-party that should
have been discharged by the defendants. *See* Am. Compl. ¶¶ 147-59.  Moreover, with respect to
the claim seeking indemnification for any future claims, the School District does not allege that
any past or current students, teachers, or employees of the School District have sustained any
injuries. *See Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ("The question is
whether the petitioner's allegations are sufficient to entitle it to the declaratory relief prayed in its
complaint. . . .  Basically, the question in each case is whether the facts alleged, under all the
circumstances, show that there is a substantial controversy, between parties having adverse legal
interests, of *sufficient immediacy and reality* to warrant the issuance of a declaratory judgment."
(emphasis added)).  Accordingly, the Court dismisses the School District's declaratory judgment
claim.

## 4. Punitive Damages

The defendants contend that the School District's claim for punitive damages fails as a

matter of law because it has not alleged any facts that meet the high bar for punitive damages.

"Under New York law," the Second Circuit has explained, "punitive damages are appropriate in

cases involving gross, wanton, or willful fraud or other morally culpable conduct." *Action S.A.*

*v. Marc Rich & Co.*, 951 F.2d 504, 509 (2d Cir. 1991) (internal quotation marks and citations

omitted).  In this case, the School District has alleged that the defendants knew, as early as the

1930s, that PCBs caused serious harm to humans and animals, but, despite this knowledge,

continued to market them, without full disclosures or warnings to the public, in order to make a

profit. *See* Am. Compl. ¶¶ 29-54.  This conduct, if proven, supports an award of punitive

damages. *See Walker v. Sheldon*, 179 N.E.2d 497, 498 (N.Y. 1961) ("Punitive or exemplary

damages have been allowed in cases where the wrong complained of is morally culpable, or is

actuated by evil and reprehensible motives . . . ."); *Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d

524, 543 (S.D.N.Y. 2007).

### Conclusion

For the foregoing reasons, the defendants' motions to dismiss the Amended Complaint

(docket entries number 45 and 49) are granted in part and denied in part.  Given the School

District's filing of an Amended Complaint and withdrawing numerous claims contained in the

original Complaint, the defendants' first motions to dismiss (docket entries number 9 and 19)

with respect to those withdrawn claims are denied as moot.

The Clerk of the Court is directed to close docket entries number 9, 19, 45, 49.

*It is so ordered.*

07 Civ. 8648 (SCR)                                                                          21

Dated: _November 10_, 2008

      White Plains, New York

                                        Stephen C. Robinson
                                     United States District Judge